## CAMP v. CAMP.

1. Where C., about to sell a tract of land, represented to the proposed purchaser, that an open unmarked line would run in such a direction, as to include a field of forty acres of rich bottom land on an adjoining tract, when he had been pre-viously informed by the owner of the land, that he had made an experimental survey, and found that the line would run so as not to include the field, as part of the land of C.; which, upon a survey, was found to be the fact,—held, that this was such a fraudulent representation of a material fact, as would authorize a Court of Chancery to rescind the contract.

Error to the Chancery Court at Talladega.

THIS bill is filed by Larkin Camp, and seeks the rescission of a contract, for the purchase of a half section of land. The complainant alledges, that he is a cousin of the defendant, and being desirous to settle himself on such a tract, as had sufficient good land for his means, he called on the defendant to aid him in purchasing. The defendant offered to sell him the tract, which he afterwards purchased, and complainant desiring to examine the land, it was shown to him by the defendant. One of the lines was not marked by the surveyor, more than one-third of the distance, or at least, the marks could not be found. On that side, the tract was bounded by land owned by Colonel McElderry, who had cleared a piece of good land, thirty-five or forty acres of which, the defendant represented to be on the tract he was then offering to sell, showing the complainant where the line would cross the fence. This land, the complain-ant alledges, was rich and fertile bottom land, and worth eve-ry other acre proposed to be sold; that in the confidence that these representations were true he purchased the land; that he has since discovered that but a very small portion of the land in McElderry's field belongs to the tract purchased by him, and that the defendant knew this fact when he made the representa-tion, and sold the land; that before he made this discovery he he had paid the defendant a negro woman, valued at seven hun-dred and fifty dollars, the whole amount of the purchase being fifteen hundred dollars, and that as soon as he discovered the

fraud practised on him, he offered to rescind the contract. The prayer of the bill is, that for the fraud in the sale of the land, the contract be rescinded; that the defendant be required to deliver up the negro woman, or her value with interest &c.; and that his notes be delivered up and cancelled.

The answer denies that there was any fraud in the sale of the land; that the complainant examined the land, and traced the open line so far as it could be traced by the surveyor's marks, and that the corner trees were shown to complainant. He denies that complainant purchased on the faith of his representations, but that all the facts to enable him to form his judgment were equally within his knowledge, as that of defendant. He admits that he did show complainant where he supposed the line would cross McElderry's field, and that he stated, that McElderry had forty acres of his land within his inclosure, but denies that he stated that there were forty acres within the tract he sold to Camp. He insists, that his representations were matter of opinion, of the correctness of which the complainant had the same means of judging that he had.

The evidence shows very clearly, that the defendant did point out to the complainant where the line would cross McElderry's field, and that he stated that forty acres of the field would belong to the tract he was offering to sell to Camp, and that this is rich bottom land, valued by a witness at twenty dollars per acre.

Col. McElderry testified that the line spoken of, was a range line, that it had been marked by the surveyor only one-third of the distance, which was a half mile; that he had himself run out the line with a pocket compass, and found that the field was principally on his land, and so informed the defendant previous to the sale to complainant; that the line has since been run by the county surveyor, by which it was ascertained that not more than from a half an acre to an acre of land of his field was included in the land sold to Camp. On his cross examination in answer to a question by defendant, whether the line thus run was established as the true line, he answered it was not.

Upon the hearing, his honor the Chancellor dismissed the bill, from which this writ of error is prosecuted.

45

CHILTON, for the defendant in error.

ORMOND, J.—The bill prays a recision of the contract, on the ground, that it was obtained by the fraudulent representations of the defendant. The facts are, that the complainant being about to purchase land of the defendant, made an examination of it with him for the purpose of ascertaining whether it contained a sufficient quantity of valuable land to suit him. On one of the boundary lines of the tract, half a mile in length, no marks of the surveyor could be discovered but one third of the distance from one of the corners. That portion of the line not marked, was bounded by the lands of Colonel McElderry, who had cleared a field of rich bottom land, forty acres of which the defendant represented to the complainant to be part of the land he was then offering to sell; pointed out where the line would cross the fence, and designated the course of the line through the field, by a reference to standing trees. It is now ascertained, that not more than one acre of this land belongs to the tract sold by defendant to complainant.

The defence set up by the answer and by the argument of counsel is, that the representations were matter of opinion merely. The proof is conclusive to show, that the representations were made, and that the defendant, before the sale, had information that the line did not run as he represented it.

An examination of the case has satisfied us that the contract was obtained by the representations of the defendant of material facts, which he must have known at the time to be untrue, and also that he concealed material facts within his knowledge, which fair dealing required that he should have disclosed.

The complainant was a stranger in the neigborhood, and had never seen the lands before. The defendant, who was the owner, was well acquainted with it. It would naturally be an object of interest with him to know how the lines of his tract ran in reference to this piece of valuable bottom land, which, if included within his tract would greatly increase its value; and accordingly we find, that it had been the subject of conversation between him and the adjoining proprietor, who had the same interest; and that the latter had informed him that if the marks of

the line which could be found were correct, that the land belonged to him, as he had run it out himself with a pocket compass. Yet with this information of where the line did run, we find him not only concealing it from the complainant, but undertaking to point out precisely where the line would run thro' the field, designating the point where it would cross the fence, and its course through the field by a reference to sensible objects upon or near the supposed line.

It is certainly true, that the course of the unmarked line, to one who had no other guide than the extreme points, would be matter of opinion or conjecture. Is the conduct of the defendant explicable on this hypothesis? It has already been remarked that as the owner of the land, he must have felt considerable interest in ascertaining this fact; when this is considered in connexion with the manner in which the information was given, the designation of the precise spot where the line would enter the field ; the indication of its precise course through the field, the quantity of fine land which would be thus added to a tract, which appears to be quite sterile, there can be but little doubt of the *quo animo*. But when to this is added the startling fact, that he was informed by one who had run the line, that it was different from his representations of it, but little doubt can exist that the intention was to deceive. The principles of justice and fair dealing, demanded of him a disclosure, that though such was his opinion, (if in fact he entertained it,) that the line had been run out by another, and that by his survey the field was excluded. Had he done so, there can be no doubt that the purchaser would have insisted on a survey of the land, to ascertain its true boundary. It is impossible not to see in the whole conduct of the defendant a studied attempt to deceive, not only by the assertion of a fact, which he either knew nothing about, or knew to be untrue, but also, by the concealment of a fact, which if disclosed, would have deprived his assertions of any claim to belief.

It is contended, that the law will not assist a purchaser, who does not enquire and examine for himself, but supinely rests on the opinions of those with whom he is dealing. The true meaning of this rule is, that the purchaser must judge for himself, as to all those matters which lie in opinion merely; as for

example, as to the value or quantity of the article he is about to purchase; assertions upon these matters, by the vendor should pass for nothing; so also, if he should falsely attempt to bolster up his declarations by imaginary opinions of others, these are the common artifices or tricks of trade, which every one competent to make a contract, is, by law presumed able to guard against. Nor is the seller under any legal obligation to call the attention of the purchaser to those qualities of the article offered for sale, open to common observation, which depreciate its value, but he must not resort to any artifice to conceal them.

But the law is not so destitute of morality, as not to require each of the contracting parties to disclose to the other all material facts, of which he has knowledge, and of which he knows the other to be ignorant, unless they are open to common observation; and not to forbid any intentional concealment, or suppression of the material facts necessary to be known, and to which the other has not equal access, or means of ascertaining. [2 Kent's Com.; 1 Ed. 377, and cases cited in support of the text.]

It is true, the complainant might have refused his confidence to the representations of the defendant, and insisted on a survey to ascertain the boundary; but whilst the law exacts ordinary care and diligence on the part of the purchaser to ascertain the quality and quantity of the article he is about to purchase, and " does not go the romantic length of giving indemnity against the consequences of indolence or folly, or a careless indifference to the *ordinary* and *accessible* means of information," it does not exact *extraordinary* diligence, but as to those facts which, by ordinary diligence could not be ascertained, it permits a reliance on the assertions of the party, who from his opportunities, has the means of knowledge.

Thus at the last term, in the case of Young v. Harris, admr., this Court relieved a purchaser who was a stranger in the country, and relied on the assertion of the vendor, that he had title, when in fact, the land had been entered in the name of an infant son of the vendor, which could have been ascertained by application at the land office; and on the ground, that when there was no cause for distrust, such extreme diligence was not

required. So in this case the complainant might have insisted on a survey of the land, but we cannot think he was guilty of folly, or supine negligence in trusting to the positive declarations of one who, from his situation, might well be presumed to know the facts he undertook to state, and from his relationship, it might be supposed he would not voluntarily deceive.

It is supposed by his honor the Chancellor, that it is not yet satisfactorily established, that the cleared land, which is the subject of this controversy, is not a part of the land purchased. The line in dispute is a range line, and so far as the marks can be ascertained, it must be assumed to be correct. The unmarked part of this line according to the proof of Col. McElderry, has been surveyed by the county surveyor, and by the line thus run, the cleared field except about an acre is on his land; and until this this survey is impeached, we presume it to be correct. What the witness meant by saying on the cross-examination, that the line thus run " was not established as the true line," we do not comprehend. The survey by a competent person, such as we must presume the county surveyor to be, would be sufficient proof of the situation · of the disputed line to authorize either a Court or jury to act on it as a fact proved in the cause.

It could not, in a legal sense, " be established as the true line ;" but by the finding of a jury in a suit to settle the boundary. It is probable that the witness meant that the survey was not recorded in the office of the county Court, as the statute requires. But it is certain, from the proof that a survey was made by a competent person, and the result of that survey, until impeached, is at least *prima facia* evidence.

It is not however important whether this fact is proved or not, as it is expressly alledged in the bill, that the cleared land, which was the subject of the representation made by the defendant at the time of the sale is not a part of the land purchased by the complainant, and this fact is *admitted* by the defendant; it was, therefore, not only unnecessary to prove it, but it could not be disproved.

The result of our examination, is, that the complainant is entitled to the relief he asks for, and that the Chancellor erred in dismissing the bill. The decree should have been, that the

contract be rescinded, and that the notes and title bond be concelled.    That the complainant recover the negro woman taken in part payment, if to be had, with legal interest on the sum she was estimated at, during her detention, or her value, as estimated by the parties.    That an account be stated between the parties charging the complainant with the value of the occupation of the land if any, and the defendant with the value of all valuable and lasting improvement made there previous to his offer to rescind the contract.

Let the cause be remanded for further proceedings.