ORMSBY v. BUDD ET AL.

1. **Sale:** FALSE REPRESENTATIONS: WARRANTY. Where the vendor fully understands the character and value of the thing offered, and he knows that the vendee has no information whatever thereof, and the sale is made wholly upon the representations of the vendor, such representations will amount to a warranty. (See opinion for authorities.)

2. **Conveyance:** FALSE REPRESENTATIONS: RESCISSION IN EQUITY: PURCHASER WITH NOTICE. Where B. secured a conveyance of land to himself upon such false representations that a court of equity would have decreed a reconveyance if he had still held the title, such decree was properly entered against J., who took the title from B. with knowledge of all the facts, if, indeed, B. was not his agent in the matter.

3. ———: ———: ———: TERMS OF: PLEADING. Where a conveyance of lands was secured by defendants from plaintiff in exchange for certain mining stocks, upon false representations as to the value of the stocks, equity ought not to order a reconveyance without requiring a reassignment of the stocks and the refunding of such money as defendants in good faith expended in protecting the lands against preexisting liens. But, on the other hand, a decree for reconveyance ought not be denied because plaintiff did not tender, or offer in his petition, the money and the stocks, where no question of that kind was made by the answer.

*Appeal from Palo Alto District Court.*

SATURDAY, JUNE 18.

ACTION in chancery to rescind the sale of certain lands, and to cancel the conveyance executed by plaintiff therefor, on the ground that the sale and conveyance were pocured

and induced by the fraud of defendants. There was a decree granting the relief prayed for by plaintiff. Defendants appeal.

*Stone, Ayres & Gamble*, for appellants.

*Soper, Crawford & Carr*, for appellee.

Beck, J.— I. The plaintiff traded to defendant Budd 416 acres of land in Emmet county for stock in the Ford Coal & Mining Company, of the par value of $5,810, estimated in the trade at eighty per centum of its face. The lands were subject to mortgages amounting to $2,500, and, after deducting the amount of the incumbrances, which were to be paid by Budd, were worth the estimated value of the stock. Plaintiff claims that, through the false and fraudulent representations of Budd as to facts affecting the value of the stock, he was induced to make the trade, accepting the stock in payment upon the land at eighty per cent of its par value, when in truth it was worth no more than ten cents on the dollar.

II. We think the evidence supports the claim of plaintiff. It clearly shows that the value of the stock does not exceed ten per cent of its par value. Of this we think there can be no question. Indeed, the evidence inclines our minds to the belief that the stock was nearly valueless. Budd represented to the plaintiff facts in regard to the property of the corporation, its business and business prospects, and other matters affecting the value of the stock, which induced plaintiff to make the trade. That these representations were untrue, and so known to Budd, cannot be doubted; nor can it be doubted that they were made for the purpose of inducing plaintiff to take the stock. They were not the mere expressions of opinion as to the value of the stock, or the property of the corporation. A printed pamphlet, describing the property of the corporation, and its business and business prospects, was used by defendant to support his oral statements. Much of this pamphlet was untrue, and so known to Budd. Plaintiff

1. SALE: false representations: warranty.

sought information of another, who, unluckily for plaintiff, was a stockholder and officer of the corporation. While no untrue statements were made by this person, he certainly did not tell the whole truth, and the letter written in response to plaintiff's inquiry was well calculated to mislead plaintiff, and prepare him to accept Budd's statements. Plaintiff lived in Emmet county, and the property of the corporation was in Warren county. He had no knowledge or information of the character or value of the property other than what he derived from Budd, which was well known 'to him. Budd's representations amounted to a warranty. *Smith v. Richards*, 13 Pet., 26; *Bean v. Herrick*, 12 Me., 262; *Camp v. Camp*, 2 Ala., 632; *Miner v. Medbury*, 6 Wis., 295.

III. Budd conveyed the property in controversy to defendant James, who had full knowledge of the transaction

2. CONVEY-ANCE: false representa-tions: rescis-sion in equity: purchaser with notice.

between plaintiff and Budd, and well knew the true value of the stock in the corporation traded to plaintiff. Budd had obtained the stock from James, and paid nothing for it at the time of the purchase, but agreed to pay for it as he could,—"as fast as he could make it." He sold other stock of James, amount-ing to over $7,000, receiving from James twenty-five and thirty-three and one-half per cent commisssion for the sales. Budd carried blank certificates for stock signed by the officers of the company, but wholly blank as to the number of shares of stock, name of the assignee, etc. He was thus equipped to transfer the stock in question to suit purchasers,—proba-bly to the full extent of the capital of the company, certainly to the extent of the stock owned by James and himself. The lands in controversy were conveyed to James in about two weeks after the conveyance by plaintiff. The evidence sup-ports the conclusion that James had full knowledge of the fraud practiced by Budd in inducing plaintiff to make the trade. Indeed, we think that he sanctioned the fraud by prompting and employing Budd to sell the stock. And the

Ormsby v. Budd et al.

inference may be fairly drawn that in the transaction Budd was but the agent and instrument of James.

IV. As has been stated, Budd assumed to pay certain mortgages on the property, which provided for the payment of interest, and the keeping of the buildings thereon insured, and, in default thereof, the whole amount of the principal of the mortgage would fall due. Certain payments, amounting to about $90 on account of insurance, interest, and commission for the renewal of the loans, were made by Budd and James. These payments, except the renewal commission, were made after the suit was commenced. Defendants insist that, as plaintiff fails to tender, or offer to pay, in his petition, these several sums, thus putting defendants *in statu quo*, he is not entitled to any relief. Upon this point it is sufficient to say that defendants do not set up in their answer the failure to tender these sums as a defense. The defendant James in his answer alleges that plaintiff is estopped by these payments from disputing his title to the lands. We cannot discover any ground upon which this claim of estoppel can be supported. But we think that plaintiff ought to be required by the decree to reimburse defendants for the money paid by them on account of the insurance, commission and interest on the mortgage.

Defendants also insist that plaintiff's offer to retransfer the stock is not sufficient. But no objection of this kind was raised by the pleadings, or urged in the court below, so far as we are able to discover. Plaintiff in his petition does not offer to make the transfer of the stock. We discover no prejudice which can result to defendant if plaintiff file with the clerk of the court proper assignments of the stock certificates before the reconveyance to him of the lands is made by defendants, or before the deeds to defendants are canceled. The decree should so provide.

The cause will be remanded to the court below for a decree in harmony with this opinion. Defendants will pay all the costs made in the case in both the court below and upon this appeal. AFFIRMED.