Ludington vs. Patton and others.

LUDINGTON, Appellant, vs. PATTON and others, Respondents.

*May 24—September 24, 1901.*

*Wills: Election by widow: Trusts and trustees: Omission to inform
  widow of her legal rights: Failure to elect: Intent: Relief in equity:
  Mistake of law: Fraud: Limitations: Laches: Rescission of con-
  tract: Offer to restore: Pleading: Circuit and county courts: Ju-
  risdiction: Equitable relief against judgment: Election between
  remedies: Accounting.*

Harrison Ludington died testate, leaving substantially all his estate,
  upwards of $1,250,000 (part being real estate under lease with rent
  reserved, his wife having joined in the lease), to trustees who were
  also named as executors, in trust for the benefit of his widow, who
  had two adult children by her former husband, her provision being
  less than one fourth in value of her legal rights, and the balance
  to his six children by a former wife. The will was read immedi-
  ately after the funeral in the presence of the widow, the trustees,
  who were sons-in-law of the testator, and the children mentioned
  except one daughter of the testator. One of such trustees then
  said the provision for the widow was insufficient, to which she as-
  sented. He then announced that the heirs would consult as to
  making some concessions to the widow, and they all retired for

Ludington vs. Patton and others.

that purpose.   Thereafter, on the same day, the trustees. on behalf
of the heirs, offered to increase the allowance to the widow, such
increase not making the entire provision for her equal to one half
the value of her legal rights.   In reliance upon the trustees, as
they had good reason to know, to treat her justly, and in the belief,
induced by their attitude in the matter, that she was dependent
upon the heirs for what she might obtain in excess of the testator's
provision for her, that they were all disposed to treat her gener-
ously, and that their offer was a liberal allowance for her in view
of all her rights, she accepted it.   She was then informed that she
would be expected to sign the necessary paper to consummate the
transaction and a petition for the probate of the will.   Subse-
quently she signed such paper, it being presented by the attorney
for the trustees, a person who had for many years acted as attor-
ney for her husband and upon whom she relied, as the trustees had
reason to know, to guard her interests in common with the inter-
ests of the others.   No explanation was made to her of the nature
of the paper so as to impress upon her mind its bearing upon her
legal rights in the estate.   It in terms sold and conveyed all such
rights to the trustees in consideration of the allowance agreed to
be made to her.   The contract was carried out on both sides for
over six years.   When it was made, the widow was informed by
the trustees that the value of the estate was about $1,000,000.
It was in fact worth much more than that, and soon after the
transaction she knew that fact by public report, but did not know
of or appreciate the rights which she had signed away, and did
not become informed thereof till shortly before the commencement
of this action.   The probate of the estate was seasonably completed
and a decree regularly entered confirming the title to the property
in the trustees upon the trust named in the will as modified by the
aforesaid contract.   The widow did not form any intent, within
the year after the will was presented for probate, or theretofore, to
take the provision made for her by law.   She did not, during such
time, know of her rights in the matter, but was induced to believe,
as indicated, that she was dependent upon the favor of the heirs
for any addition to the allowance made for her by the will.   She
commenced an action to rescind the contract, made as stated, on
the ground of fraud, without restoring or offering to restore what
she had received thereunder, but the complaint indicated her will-
ingness to do equity in the premises.   Subsequently she com-
menced two actions at law against one of the trustees for damages
for the alleged fraud, which were discontinued before the action

Ludington vs. Patton and others.

in equity was concluded. The heirs were not materially injured by delay in the commencement of the equitable action. *Held:*

1. The executors and trustees were trustees for the widow as regards her statutory rights in the estate, and, independent thereof, they occupied a position of trust and confidence towards her.

2. The executors and trustees did not owe the widow any duty to inform her of her legal rights in the estate of her husband or the value thereof, or how to secure the same, so long as they made no effort to extinguish such rights by purchase or otherwise but remained passive in the matter.

3. When they approached the widow to extinguish her legal rights in the estate by purchase, they owed the same duty to her to disclose everything within their knowledge affecting her rights as any trustee owes to his *cestui que trust* under similar circumstances. They should have fully disclosed to her all the knowledge which they possessed and should not have bought in her interest in the estate to her disadvantage.

4. The statute giving to a widow one year after the filing of the petition for the probate of her husband's will, within which to elect to take the provision out of her husband's estate made for her by law, is a statute of limitations, and when it has fully run against her it extinguishes her statutory widow's rights beyond the power of legal or equitable remedies to relieve her, in the absence of fraud entitling her to relief upon the ground of equitable estoppel.

5. If a trustee deals with his *cestui que trust* to the disadvantage of the latter, such *cestui que trust* can repudiate the transaction upon discovering the fraud, hold the trustee responsible for damages for the wrong, or charge him upon a constructive trust of any property wrongfully obtained.

6. In all cases where a trustee by contract with his *cestui que trust* obtains the interest of the latter in the subject of the trust, the transaction is presumed to be fraudulent and void, casting upon the trustee the burden of affirmatively showing, clearly, that the two acted at arm's length in the transaction or that it was to the advantage rather than to the disadvantage of the *cestui que trust*, and that he was given all the information possessed by the trustee, and that the latter acted in the utmost good faith.

7. The disability of a trustee to deal for his own gain with his *cestui que trust* in respect to the subject of the trust, extends to any such dealing for the benefit of others.

8. The statute of limitations (sec. 4222, Stats. 1898) commenced to run from the time the widow knew of the fraud constituting

Ludington vs. Patton and others.

the ground of her cause of action or might have known thereof by the exercise of ordinary care.

9. The trustees being chargeable with having created in the mind of the widow the impression that she was dependent upon the heirs for any addition she obtained to the provision made for her by her husband, sec. 4222, Stats. 1898, did not commence to run against her, as to the contract made with the trustees, till she obtained, or by the exercise of ordinary care might have obtained, information as to the extent and nature of her legal rights.

10. The fact that the failure of the widow to take her legal rights grew out of a mistake of law does not militate against the power of equity to grant her relief. since mistakes of law upon the part of a *cestui que trust*, induced by the trustee, or such mistakes occurring between persons where analogous relations exist, are relievable in equity as readily as mistakes of fact.

11. Mere delay in asserting a right, short of the limitation fixed by statute, does not bar the right in equity.

12. In respect to an action in equity for the rescission of a contract on the ground of fraud, previous restoration or offer to restore what was received thereon is not a condition precedent to the right to commence the same, as in case of an action at law. In equity it is only necessary to show by the complaint a willingness to do equity, and a failure in that regard does not go to the cause of action unless taken advantage of by a special demurrer. A demurrer *ore tenus* is not sufficient.

13. The doctrine that a person must stand upon his contract or rescind it *in toto* and restore or offer to restore all he received thereon so far as strict equity requires, does not apply to an action in equity to rescind a contract on the ground of fraud, except as regards willingness to submit to a complete restoration of the original relations between the parties and the judgment to be entered in the case.

14. An action at law to recover back that which has been paid upon a contract void for fraud, supposes a precedent rescission of the contract by act of the plaintiff; an action in equity to rescind a contract supposes need of equity to effect that end and looks to the decision in the action to accomplish it and to impose such terms of the rescission as may be deemed equitable under all the circumstances.

15. A court of general jurisdiction, like the circuit court, has jurisdiction concurrent with the probate court in all matter connected with the settlement of estates. Such jurisdiction is suspended by the jurisdiction of the probate court in the absence of

Ludington vs. Patton and others.

peculiar circumstances rendering the latter jurisdiction inadequate to furnish as complete and effective a remedy as the former.

16. Where a judgment gives to a party to a proceeding in which it was entered an unconscionable advantage, the person aggrieved thereby may, by proceeding seasonably, obtain relief in equity by an action bearing directly upon the party to prevent him from enjoying the fruits of the wrong, such action not affecting the judgment or impeaching its validity in any way.

17. The commencement of an action at law for damages upon the theory of an existing contract, after the commencement of an action to rescind such contract on the ground of fraud, does not affect the latter action. The commencement of the first action constitutes an irrevocable choice between inconsistent remedies.

18. The trustees and executors, having by their wrongful treatment of the widow prevented her from forming an intent to take the provision made for her by law, are chargeable with having fraudulently prevented her from making the election necessary to secure such provision, since, had she formed such intent, she would probably have executed it.

19. The principle that no man can in equity profit by his own wrong, and the principle that if a person be fraudulently prevented from doing an act it will be considered in equity, as against the party guilty of the fraud, as if the act were done, apply, precluding the trustees from profiting in their representative capacity by the enrichment of the estate by the failure of the widow to secure the provision made for her by law.

20. No man can take advantage of his position as trustee to deal with his *cestui que trust* to the disadvantage of the latter and successfully challenge a court of conscience to remedy the mischief thereby accomplished, if it be seasonably invoked.

21. The trustees under the will are liable to account to the widow as constructive trustees for all the property and the use thereof, which she would have come into the possession of by an election to take the provision made for her by law; and the heirs are liable to account in the same manner for all property that has been distributed to them which justly belonged to her, and their interests in the trust property still in the hands of such trustees are chargeable with their obligation in that regard.

22. In the accounting by the trustees, the rents received from real property under lease at the time of the death of the testator must be treated as rents and profits of real estate in which the widow was entitled to be endowed, notwithstanding she joined with her husband in making the lease.

Ludington vs. Patton and others.

23. In the accounting between the trustees and the widow she must account for all she has received from the estate, and the trustees, under the circumstances, should be allowed their costs and charges upon substantially the same basis as allowances are made to trustees of an express trust.

DODGE and BARDEEN, JJ., dissent.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

Appeal from a judgment dismissing plaintiff's complaint, in an action against the trustees and heirs of the estate of Harrison Ludington, deceased, to rescind, on the ground of fraud, a contract whereby the plaintiff, his widow, surrendered her legal rights in such estate, and to recover the damages she sustained by being induced, as alleged, to enter into such contract. The issues litigated upon the trial and the matters covered by the evidence are sufficiently indicated in the following summary of the findings of fact made by the trial court:

In 1875 the plaintiff, a widow fifty-four years of age and mother of three children by her deceased husband — one a married son with whom she was residing in the city of Milwaukee, one a daughter of ten, and the other a daughter of eight years of age,— and who was enjoying the income of an estate of $80,000 left by her deceased husband and settled upon her by his will during her widowhood, was married to Harrison Ludington of the city of Milwaukee, Wisconsin, a widower sixty-five years of age having six children by his deceased wife, and reputed, to the knowledge of plaintiff, to be a man of wealth. After such marriage Mr. Ludington and plaintiff resided together in the Ludington homestead in Milwaukee until June 17, 1891, at which time he died. Plaintiff resided in New York up to 1873, when she removed to the city of Milwaukee to reside with her son, and so resided, as before indicated, at the time of her second

marriage.    After such marriage plaintiff's daughters resided
with her at the Ludington home, one till she died and the other
till about six months before the death of Mr. Ludington.    At
the time of such marriage Mr. Ludington's four eldest chil-
dren resided away from home, three of them being married.
His two youngest children were infant girls and resided at
home.   Some time subsequent to the marriage, Harrison Lud-
ington, Jr., one of Mr. Ludington's sons, became afflicted with
blindness and returned to reside with his father, and so resided
till the latter's death.    Before such death occurred the two
infant daughters of Mr. Ludington, before mentioned, grew
to womanhood, were married, and resided away from the
parental roof.    Plaintiff, by the terms of her first husband's
will, forfeited, by the second marriage, her interest in his
estate to her children.    Mr. Ludington was mayor of the
city of Milwaukee when he married plaintiff, and thereafter
became governor of the state of Wisconsin.    For many
years before he died he was a significant figure in the busi-
ness and political circles of the state.   His death occurred
June 17, 1891.   He left a will devising and bequeathing
all his property to A. G. Van Schaick and *James E. Patton*,
two of his sons-in-law, as executors and trustees for the use
and benefit, in the main, of his six children.   His funeral was
in the afternoon of June 20, 1891.

Upon the return of the family from the funeral, to the
Ludington homestead, at the suggestion of Mr. Van Schaick,
the will was read in the presence of the plaintiff, the other
executor and trustee named in the will, the son and daugh-
ter of plaintiff, and all the beneficiaries thereunder except
the wife of Mr. Van Schaick.   By the terms thereof plaint-
iff was given an annuity of $3,000 per year for life, the use
of the homestead and its belongings as a home for life, and
the sum of $10,000 in money, outright, or $15,000 in money
in lieu of the $10,000 and the use of the homestead if she
should choose to remove therefrom.   It was stated in the

will that such provision was in accordance with an under-
standing between plaintiff and the testator, which provision
was deemed, by both of them, just and equitable.

Plaintiff had great affection for her son, who was present
with her upon the occasion just mentioned, but she did not
turn to or rely upon him in any way in business matters.
She was, when the will was read and during the subsequent
transactions leading up to the making of the written con-
tract hereafter mentioned, self-possessed and competent to
transact business, but was, in a measure, mentally and phys-
ically exhausted by her exertions in the care of Mr. Luding-
ton during his last illness, and the anxieties and grief inci-
dent to her situation and the scenes through which she had
passed. When the provision made for her was read as be-
fore stated, Mr. Van Schaick remarked that it was inade-
quate for her support, and she said that it was not sufficient
therefor. Thereupon the heirs and the husbands of the
married daughters, including Mr. Van Schaick and *Mr. Pat-
ton*, retired to the latter's home for a consultation, saying,
as they departed, that they would communicate the result
of their conference to plaintiff during the day. Thereafter,
in accordance with such promise, *Mr. Patton* and Mr. Van
Schaick returned to the Ludington home and reported to
plaintiff that they were authorized, on behalf of the heirs,
to offer her $5,000 per year in lieu of the $3,000 mentioned
in the will, $25,000 in money instead of the $10,000, to
complete the home in Kenwood, a suburb of Chicago,— the
construction of which was commenced by Mr. Ludington
with the knowledge of Mr. Van Schaick and with the ap-
proval of plaintiff, designed as her home after his death if
she so desired,— and to add to the original design of such
Kenwood home a stable, and convey the property to her
prepared for occupancy, free from all incumbrances, and
allow her to take such of the household furniture and horses,
carriages, etc., as she might desire. She verbally accepted

such offer and was thereupon informed by Mr. Van Schaick and *Patton* that she would be expected to sign a petition for the probate of the will and a written instrument embodying the contract between her and the heirs and themselves as trustees of the estate and executors of the will. She was further informed, at the interview, that the estate would be probated as worth about a million dollars.

There was no communication after such interview, between the plaintiff and either Van Schaick or *Patton* or either of the Ludington heirs in regard to the estate or plaintiff's rights therein. Five days after the verbal contract made as aforesaid, an attorney, employed by Van Schaick and *Patton*, presented to plaintiff, for her signature, a petition for the probate of the will, in which the value of the estate was stated at $500,000 in real estate and $550,000 in personal property, which petition she signed. The value of the real estate was fairly stated in the petition, but the value of the personal property was underestimated. Certain lumber stock, estimated to be worth $400,000, was worth at least twenty-five per cent. more, which fact was known to Van Schaick and *Patton*, and there was other personal property of the value of about $150,000 at a fair estimate. The real value of the estate was considerably in excess of the figures named, as will hereafter appear.

Five days after the petition for the probate of the will was signed as aforesaid, the attorney who presented it to plaintiff for her signature again appeared at the Ludington home and presented to her a written instrument, informing her that it was drawn in accordance with the verbal agreement made between her and Van Schaick and *Patton*. He read such instrument to plaintiff and explained it, but the exact nature thereof as regards its effect upon her legal rights in the estate was not explained to her, neither did she understand such matter, as will be hereafter more particularly stated. Upon such explanation of the paper being

made, plaintiff signed and acknowledged it. It was there-
after signed by Van Schaick and *Patton* as executors of the
will and trustees of the estate, and by all of the Ludington
children, and it was also duly acknowledged by all of such
additional signers. The petition for the probate of the will
was duly filed in the probate court a few days after it was
signed, and on the same day the written contract was filed
for record in the office of the register of deeds of Milwaukee
county. By the terms of such contract plaintiff submitted
to the will and released all claims thereunder and also all her
legal rights in the estate of the deceased, and in form con-
veyed to the trustees, Van Schaick and *Patton*, all her right,
title, and interest, present and future, in such estate, " to the
end and effect that the same be administered under said will
and be disposed of by the executors and trustees in the same
manner and with the same effect as though the plaintiff had
not survived her husband and had left no issue her surviv-
ing." And for greater certainty as to the full consumma-
tion of the purpose of the contract, it was provided that
plaintiff should hold herself in readiness at all times to make
any additional paper that might be deemed necessary to
that end. In consideration of the rights conveyed by plaint-
iff as aforesaid, the trustees and heirs, in the writing, agreed
and bound themselves in substance according to the terms
of the verbal contract before mentioned, it being provided
that $25,000 should be paid plaintiff as soon as the will was
admitted to probate, that she should be paid the annuity of
$5,000 per year at such times as she might desire, and that
such payments should be secured to her in any reasonable
and proper way she might desire.

During the period covered by the transactions related in
regard to the will and contract, statements were published
in the Milwaukee city papers relating to the Ludington
estate, placing the value thereof at $2,000,000. The petition
for the probate of the will, the contents thereof and of the

contract before mentioned, and the nature and amount of the estate, were referred to in the public prints with particularity; and such published matter was brought to the attention of plaintiff, who made clippings from the papers containing such references, which she sent to her relatives in the East.

The agreement contained in the written contract was carried out by the defendants,— the property, aside from the annuity, paid or conveyed to plaintiff being of the value of $48,000, no part of which has been returned by plaintiff or offered to be returned, except that a deed of the Kenwood property was tendered to defendants upon the trial of this action and was deposited with the clerk of the court for their use; and further, in the prayer for relief, the right of defendants to have credit for the sums paid to plaintiff, in determining the amount she would be entitled to in case of a recovery, was recognized. Plaintiff, since about the time of the execution of the contract, has been in possession of a copy thereof. She visited the East shortly after the contract was made, thereafter returned to the city of Milwaukee, and subsequently, in the fall of 1891, removed to the Kenwood property near Chicago, where she has since resided, her son making his home with her. During such residence in Kenwood she has often visited friends in the city of Milwaukee, but not the members of the Ludington family. In September, 1891, by request, plaintiff joined with the beneficiaries of the trust in waiving the filing of any inventory by the executors in the probate of the estate.

Mr. Van Schaick died in December, 1891, after which *Mr. Patton* administered the estate as sole executor till the probate thereof was concluded in December, 1892. At that time the executors' accounts were finally passed upon, the probate of the estate adjudged to be at an end, and the property, in due form of law and according to the scheme of the will, was assigned to *Mr. Patton* and to *Lewis S.*

*Patrick* — the latter being appointed in place of Mr. Van Schaick, deceased,— as trustees for the uses and purposes mentioned in the will except as varied by the contract aforesaid; and they still possess the subject of the trust.

When the preliminary agreement was made between plaintiff and Van Schaick and *Patton*, she and her son understood that a widow was legally entitled to " a third " in her husband's estate, but neither of them had any clear conception of her legal rights as regards an election to take the provision made for her by law; and she was not informed on that point at any time, either by Van Schaick or *Patton*, or by the attorney whom they employed to obtain her signature to the written contract. Both Van Schaick and *Patton* understood the nature of plaintiff's legal rights, but they not only failed to inform her, at the time of negotiating with her to obtain, for the benefit of the Ludington children, her interest in the estate, or at all, of the nature of such rights or the manner of asserting them, but failed to suggest that she obtain information in that regard or to in any way put her upon inquiry as to her legal rights in the matter. She did not know, at any time before the execution of the written contract, or before the expiration of the year limited by law for her to do so, that she could file with the county court her election to take the provision made for her by law in lieu of the provision made for her by the will. The executors and trustees, from first to last, treated plaintiff, as testified to by *Mr. Patton*, as a person capable of looking out for her own interests. They did not wilfully misrepresent or misstate to her any matter to her prejudice, but they concealed the facts and the true nature of the plaintiff's rights *from her* when they should have communicated the same *to her* because of their relation *with her*, as executors of the will and trustees of the estate. They did not say anything to prevent plaintiff from obtaining the necessary information to enable her to act intelligently in

Ludington vs. Patton and others.

regard to her rights, or do anything to that end or which had that effect, except to keep silent as to her rights instead of informing her of her relations to the estate under the law, as they ought to have done before dealing with her in regard thereto. She did not, within the time limited by law, form a purpose to elect not to take the provision made for her by the will. She rested upon her rights under the contract till 1898, when this action was commenced to rescind it and to recover compensation for the loss which she suffered by not insisting, at the proper time, upon her legal rights in her husband's estate. The circumstances leading up to such commencement were as follows:

In November, 1895, Harrison Ludington, Jr., died, leaving a widow. Soon thereafter information was conveyed to plaintiff that such son had accumulated prior to his death, from his income from the estate, the sum of $30,000, and that his widow claimed a large sum out of the estate as his sole heir and legatee. The widow commenced an action to enforce her rights as such sole heir and legatee. About the same time inquiries were made of plaintiff, by friends, as to why she did not stand upon her legal rights in her husband's estate. The result of such circumstances was that plaintiff became suspicious that the estate was larger than she had supposed. Thereupon she communicated her suspicion to Mr. William M. Jones, an attorney of Chicago, who was related to her family. Thereupon such attorney employed legal assistance in the city of Milwaukee, and he and his assistant made an investigation which led to the discovery of facts from which a conclusion was reached that plaintiff had been wronged. This action was then commenced, without any dissatisfaction being previously expressed to the trustees of the Ludington estate or the heirs of such estate with the contract.

After this action in equity was commenced, plaintiff instituted an action at law, in a court in the city of Milwaukee,

having jurisdiction of the subject thereof, to recover damages from *Patton* upon the same grounds as those alleged and upon which a recovery is sought in this case. Such action was dismissed without any issue having been brought to trial. Subsequently a similar action was commenced against *Mr. Patton*, in a court in the city of Chicago having jurisdiction of the subject thereof, service being obtained upon him while he was on a visit to that city. That action was dismissed while this action was upon trial.

Since the death of Mr. Harrison Ludington, Sr., the net income from his real estate has been from $17,000 to $21,000 per year, $10,000 per year being accounted for by the rental of property called the "Pabst corner," leased during the lifetime of Mr. Ludington for ninety-nine years, plaintiff joining in the lease as his wife. A claim that Mr. Charles Tobey, the plaintiff's son, was shown an itemized statement of the property of the estate soon after the representations made to plaintiff by the executors, as to the value thereof, to corroborate their estimates, though testified to by *Mr. Patton* and corroborated by one of the Ludington heirs and the husband of another, but denied by Mr. Tobey, was rejected as untrue for the reason, among others, that it was inconsistent with the knowledge, possessed by the executors, of the record of Mr. Tobey, and inconsistent with the fact that they did not, by their treatment of him at any time, indicate that they regarded him as of any consequence at all in their dealings with plaintiff. The value of the estate in 1891, as known by Van Schaick and *Patton* when they made the arrangements with plaintiff embodied in the written contract, and when they informed her as regards the probable value of the estate, was $1,238,949.87, of which $727,099.58 was personalty, and $511,850.29 realty, exclusive of household furniture taken by plaintiff and some land in the town of Wauwatosa.

The attorney who obtained the signature of plaintiff to

the contract was for many years prior to the death of Mr. Ludington his confidential agent, to the knowledge of plaintiff, and she believed, when she dealt with such attorney, that he was acting for her as well as for the other parties interested. She received from him no information whatever in regard to her legal rights and no information that he was not acting in the capacity that she supposed. The plaintiff's business, as regards her first husband's estate, was faithfully and honestly conducted by her two brothers, who were merchants in the city of New York, and she relied wholly on them in that regard. In all that plaintiff did in making the verbal contract and in signing the written instrument which she supposed embodied such contract, she relied wholly on *Mr. Patton* and Mr. Van Schaick and their attorney, supposing that each and all were acting in good faith and in her interest as well as in the interests of the Ludington children. Prior to the summer of 1898, when plaintiff became suspicious as to the correctness of her notions as regards the value of her husband's estate when she made the contract releasing her legal rights therein, she had no knowledge as to the real value of such estate or the fact that she had been induced to part with her legal rights therein for an entirely inadequate consideration.

On the facts related, as found by the court, a judicial conclusion was reached that *Patton* and Van Schaick breached their duty to plaintiff as trustees of the Ludington estate for her as well as for the Ludington children, in that they neglected, before dealing with her to obtain a release of her legal rights in such estate, to explain to her the nature of such rights; also to inform her of the nature and amount of the income of the real estate of which Mr. Ludington died seised and the real value of the lumber corporation stock estimated by them to be of the value of $400,000; that plaintiff seasonably commenced her action for equitable re-

Ludington vs. Patton and others.

lief if she is entitled to any such relief on the facts; that
she was not guilty of laches which would bar her, either in
equity or under any statute of limitations of this state; but
that her right to any interest in the estate of her husband,
other than that which was secured to her by the will or by
the voluntary act of the heirs, depended upon her electing
to take the provision made for her by law within one year,
in the manner and form required by the statute on that
subject; and that, as she never made any such election and
never intended to make any, she lost her rights, and equity
is powerless to relieve her. Judgment was entered in ac-
cordance with such conclusions, dismissing the action, and
plaintiff appealed.

For the appellant there were briefs by *Jones & Jones* and
*Hugh Ryan*, attorneys, and *Miller, Noyes & Miller*, of coun-
sel; and a supplemental brief by *Jones & Jones*, solicitors,
and *William M. Jones*, of counsel, and the cause was argued
orally by *Geo. P. Miller*.

In the principal brief it was argued, among other things,
that the executors and trustees were in a confidential rela-
tion to the widow, and their purchase of her interest in the
estate without the fullest disclosure of facts and law was
fraudulent. Cassoday, Wills, § 507; 1 Lewin, Trusts (Flint's
ed.), 658; *Leach v. Leach*, 65 Wis. 294; *Parry v. Parry*, 80
Wis. 130; *Disch v. Timm*, 101 Wis. 179; *Doyle v. Welch*, 100
Wis. 24; *Statham v. Ferguson's Adm'r*, 25 Grat. 28; *Havi-
land v. Willets*, 141 N. Y. 35; Story, Eq. Jur. § 187; *Wat-
kins v. Brant*, 46 Wis. 419; *Konrad v. Zimmermann*, 79 Wis.
306; *Voell v. Kelly*, 64 Wis. 504. A court of equity must
undo this fraud and give the plaintiff the same rights she
would have had if the fraud had not been perpetrated.
Equity will always give relief for fraud, no matter how the
wrongdoer obtains legal litle. Story, Eq. Jur. §§ 187, 256;
36 Am. L. Reg. (N. S.), 231; *Lord Waltham's Case*, cited in
11 Ves. 639, 14 Ves. 290; *Fox v. Hubbard*, 79 Mo. 390;

*Vane v. Vane*, L. R. 8 Ch. App. 383; *Dixon v. Olmius*, 1 Cox, Eq. 414; *Ellerson v. Westcott*, 148 N. Y. 149; *Lombard v. Cowham*, 34 Wis. 486. The requirement of election by sec. 2171 is not a law of inheritance, but a rule of evidence. See R. S. Wis. 1849, ch. 62, secs. 17–19; ch. 66, Mich. Stats. 1846; R. S. Mass. 1836, ch. 60; R. S. N. Y. 1827, pt. 2, ch. 1, tit. 3; R. S. Mich. pt. 2, ch. 2, tit. 1, secs. 11–13; R. S. Wis. 1858, ch. 89, secs. 17–19; Laws of 1877, ch. 106; R. S. 1878, secs. 2170–2172. The statute regulates election, and it does not interfere with the jurisdiction of equity in the case of election. *Van Steenwyck v. Washburn*, 59 Wis. 483, 505. In the case at bar equity jurisdiction rests on fraud, and in the exercise of that jurisdiction the court can act with reference to the statutory election as well as it might with election at common law. The statute on election has been frequently before this court for construction, but none of the other decisions in connection with it have any direct bearing on the case at bar. They all show, however, a strong inclination to liberality toward a widow. *Zœgel v. Kuster*, 51 Wis. 34; *Application of Wilber*, 52 Wis. 295; *Wilber v. Wilber*, 52 Wis. 298; *Hardy v. Scales*, 54 Wis. 452; *Melms v. Pfister*, 59 Wis. 186; *Van Steenwyck v. Washburn*, 59 Wis. 483; *Leach v. Leach*, 65 Wis. 284; *Ford v. Ford*, 70 Wis. 20, 52; *Albright v. Albright*, 70 Wis. 528; *Beem v. Kimberly*, 72 Wis. 343, 363; *Church v. McLaren*, 85 Wis. 123; *Ford v. Ford*, 88 Wis. 122, 131; *Melms v. Pabst B. Co.* 93 Wis. 140; *Jochem v. Dutcher*, 104 Wis. 611. Whatever the nature of the statute, equity will restore to the widow her dower and statutory rights taken from her by fraud. Scribner, Dower (2d ed.), 497, and cases cited; *Statham v. Ferguson's Adm'r*, 25 Grat. 67; *Akin v. Kellogg*, 39 Hun, 252, 48 Hun, 459, 119 N. Y. 447; *Smart v. Waterhose*, 10 Yerg. 94; *Evans's Appeal*, 51 Conn. 435; *Fosher v. Guilliams*, 120 Ind. 175; *Garn v. Garn*, 135 Ind. 687; *Woodburn's Estate*, 138 Pa. St. 606; *Macknet v. Macknet*, 29 N. J. Eq. 54; *Reed*

*v. Dickerman,* 12 Pick. 146. The plaintiff's mistake of law, as well as her mistake of fact, requires relief to be given her. 1 Perry, Trusts, § 184; Story, Eq. Jur. § 133; *Haviland v. Willets,* 145 N. Y. 55; *Light v. Light,* 21 Pa. St. 407; *Statham v. Ferguson's Adm'r,* 25 Grat. 28; 2 Pomeroy, Eq. Jur. §§ 847–849; *Green Bay & M. C. Co. v. Hewitt,* 62 Wis. 316; *Whitmore v. Hay,* 85 Wis. 240; *Kyle v. Fehley,* 81 Wis. 67; *Wis. M. & F. Ins. Co. Bank v. Mann,* 100 Wis. 596; *Jenkins v. Bradley,* 104 Wis. 540.

In the supplemental brief, counsel contended, *inter alia,* that the executors were trustees for all of the beneficiaries of the estate, including the widow. *Scott v. West,* 63 Wis. 555; *Leach v. Leach,* 65 Wis. 294; *Statham v. Ferguson's Adm'r,* 25 Grat. 28; *Michoud v. Girod,* 4 How. 503. The executors could not purchase plaintiff's interest in the estate, either for themselves or the children, without fully advising plaintiff of her rights, and fully disclosing to her the value of the estate, and acting in every respect with the utmost fairness; and even then the arrangement, if not advantageous to the widow, will be condemned. 1 Perry, Trusts, § 195; 1 Lewin, Trusts (1st Am. ed.), *486; *North Baltimore B. Asso. v. Caldwell,* 25 Md. 420; *James v. James,* 55 Ala. 531; *Butler v. Haskell,* 4 Desaus. Eq. 650, 705; *Leach v. Leach,* 65 Wis. 284; Bigelow, Fraud, 261, 341; *Statham v. Ferguson's Adm'r,* 25 Grat. 28; *Gandy v. Macaulay,* 31 Ch. Div. 1. Before the statutes regulating the subject of electing between dower and will were passed, the most liberal principles of equity were applied. By those principles the widow's rights were most carefully guarded against mistake, fraud, and undue influence. The statutes must be construed and limited by those principles to give effect to the right which they were intended to secure. *Sweetman v. Sweetman,* 2 Ir. Eq. 141, 152; *Woodburn's Estate,* 138 Pa. St. 606; 1 White & T. Lead. Cas. Eq. (Dickson's ed.), 431; *Watson v. Watson,* 128 Mass. 152; 11 Am. & Eng. Ency. of

Ludington vs. Patton and others.

Law (2d ed.), 97, 98; 2 Scribner, Dower (2d ed.), 519; *Evans's Appeal*, 51 Conn. 435; *U. S. v. Duncan*, 4 McLean, 99; *Smart v. Waterhose*, 10 Yerg. 94.

For the respondents there was a brief by *Bloodgood, Kemper & Bloodgood*, attorneys for *Sarah E. Patton* and others, and *Winkler, Flanders, Smith, Bottum & Vilas*, attorneys for *Frances L. White*, with *Jackson B. Kemper* and *James G. Flanders*, of counsel, and a brief in reply by *Jackson B. Kemper*, of counsel for *Sarah E. Patton* and others; and the cause was argued orally by *Jackson B. Kemper* and *James G. Flanders*. They contended, *inter alia*, that the plaintiff not having elected to take under the law instead of under the will, as provided by sec. 2172, R. S. 1878, can have no relief in this action. It is the filing of the notice of her election that gives her title. The court cannot substitute any thing else in place of this statutory requirement. The statute is peremptory. At common law and by our early statutes, the widow's elective right extended only to the claim of dower. . Secs. 17, 18, ch. 62, R. S. 1849. Ch. 106, Laws of 1877, brought the change. A new right of inheritance was thereby introduced — a limitation on the husband's power to give away his own personal estate. But this right of inheritance accrues only upon the filing of the prescribed notice. *Church v. McLaren*, 85 Wis. 122; *Albright v. Albright*, 70 Wis. 528. The court can ingraft no exception on the statute. *Van Steenwyck v. Washburn*, 59 Wis. 483. The widow was bound to know that the law compelled her to make her election as to whether she would abide by the will in one year. Ignorance of that law is no excuse. *Akin v. Kellogg*, 119 N. Y. 441, 448. The rule that if the widow fails to elect within the time specified by the *statute* she is utterly without remedy has been uniformly upheld in every state and tribunal where the question has been raised. *Burden v. Burden*, 141 Ind. 471; *Waterbury v. Netherland*, 6 Heisk. 512; *McDaniel v. Douglas*, 6 Humph.

Ludington vs. Patton and others.

229; *Stephens v. Gibbes*, 14 Fla. 331; *Bierer's Appeal*, 92 Pa. St. 265; *Light v. Light*, 21 Pa. St. 407; *Fosher v. Guilliams*, 120 Ind. 172; *Cowdrey v. Hitchcock*, 103 Ill. 262; *Ex parte Moore*, 7 How. (Miss.), 665; Schouler, Domestic Relations, § 206.

The following opinion was filed June 20, 1901:

MARSHALL, J.   While appellant's counsel filed numerous exceptions to the findings of fact, and exceptions to refusals to find as requested by them, and assigned error generally on such exceptions, no particular error in that regard is found pointed out in the printed brief, nor is the subject there discussed, nor was there anything in the oral argument by counsel for appellant to indicate that reliance for reversal is placed on such exceptions, other than the exception to the finding that appellant was not prevented from discovering her statutory rights by the conduct of defendants.   The contention is, as we understand it, that the conclusion of law upon the facts found should have been substantially in accordance with the prayer of the complaint.   While that situation relieved us from any necessity of examining the evidence at any great length, in view of the importance of the case and its character the evidence has been examined, which has resulted in a conviction that the findings of fact cannot be disturbed under the rules governing that subject,— except that part thereof wherein it was decided, in effect, that appellant was not prevented from discovering and asserting her legal rights by the conduct of the defendants or any of them, other than by the failure of Van Schaick and *Patton* to fully disclose to her the knowledge they possessed as to the value of the estate and her rights therein before the contract was made; and the further conclusion that all the suggestions appellant's counsel made as to the facts to be found were in terms or effect embodied in the findings filed, except one to the effect that appellant would

have asserted and enforced her legal rights in her husband's estate had the executors and trustees performed their duty to her as such at the time of their acquirement of her rights. There does not seem to be any specific finding upon that point.  The learned superior judge, in the conclusions of law, appears to have decided that, since appellant did not, within the year allowed to her by law, elect that she would not take the provision made by the will, and did not form any intent to so elect which was displaced by the misconduct of the executors and trustees towards her, the statute limiting the time for making such election operated upon her legal rights and extinguished them, leaving her remediless both in law and in equity, regardless of the fact that she voluntarily parted with such rights without any appreciation of their nature or value, or the manner of securing them, or the necessity for information on those points; and the duty of the executors and trustees to abstain from dealing with her for their own benefit or the benefit of others whom they represented, while she was in that state of mind, and regardless of whether, had they performed their full duty to her before such dealing, she might, or probably would, have declined to part with her rights without receiving an adequate compensation therefor.   Of course, if the learned superior judge was right in that regard, then the subject matter of fact to which we have referred, not specifically covered by the findings filed, which omission is a subject of complaint by counsel, is immaterial.

Before proceeding to discuss the questions suggested in the foregoing, upon which the correctness of the judgment appealed from depends, it seems best to consider the contention made by the learned counsel for respondents, that the judgment is right on the evidence and the facts found which are strictly facts; that the conclusion reached by the trial court, that the trustees and executors were in duty bound to see that plaintiff understood and appreciated her

legal rights before dealing with her, is a conclusion of law and is wrong; that a restitution by appellant of the benefits she received under the contract she seeks to avoid was a condition precedent to any right of action to rescind it; and that she was guilty of laches.

It seems, by the argument of the learned counsel for respondents in support of the contention that the decision of the trial court is wrong, that the executors owed to plaintiff the duty to inform her as to her legal rights or to place her in the way of obtaining such information and not to deal with her till she possessed and appreciated such knowledge, that they misapprehend the scope of the decision. They argue that it was not the duty of the executors to do anything as regards instructing appellant or stimulating her to obtain information of her rights that would be liable to disturb the scheme of the will, and to that they cite, from 1 Lewin, Trusts (Flint's Am. ed.), p. 286, and Perry, Trusts (5th ed.), § 433, the elementary principle that, " Trustees would not be justified in doing any act at variance with the trust. If, for instance, they honestly believed that property accepted by them in trust for one belonged by right to another, they would not be justified in communicating to such other that he could successfully obtain the estate. Trustees have the custody of property, but do not keep the conscience of the *cestui que trust.*" We fail to see the application of that principle to the facts of this case. Van Schaick and *Patton* stood in a far different relation to appellant than that of a mere trustee of the estate of Gov. Ludington for the particular uses and purposes expressed in the will. The entire property of the estate was willed to them for the uses and purposes expressed, and, just as effectually, for such other uses as the law ingrafted onto the will. The will did not disturb appellant's legal rights, except provisionally. They were written into the instrument, by force of the statute, as effectually as if

they had been expressed by the testator himself, leaving appellant the alternative of taking one provision or the other. The executors and trustees were the trustees of the property for appellant the same in the one case as in the other. To compare her situation and her relations to the executors with those of a mere stranger to a trust, as a test by which to determine the measure of the duties which such executors owed to her, is to set up an obviously false standard. Therefore, counsel's contention, in respect to the duty of Van Schaick and *Patton* towards plaintiff, so far as based on such principle, cannot be adopted.

Coming nearer to the rule governing at this point in the case are *Stephens v. Gibbes*, 14 Fla. 331, 356, and *Akin v. Kellogg*, 119 N. Y. 441, cited by respondents' counsel, to the effect that there is no duty resting upon the executor of a will making a provision for a widow, to inform such widow of her legal rights; but that she is presumed to know the law and that it is her duty to discover her rights for herself and to assert them. That such doctrine necessarily works oppressively in some cases cannot be denied. It enables an executor, — regardless of the disparity between provisions made for the widow of the testator by his will and those made for her by the law, and the degree of helplessness of such widow as regards choosing between the alternatives thereby presented or exercising any judgment in respect to the matter, and regardless of the degree of ignorance on her part of the value of the estate in which she is interested and the advantages to be secured by her by electing to take her rights under the law, and regardless of the advantages to the executor of her abiding by the will and the degree of his knowledge of her helpless condition as regards doing what is to her best interests,— simply by keeping silent, doing nothing to prevent her from securing her legal rights — by merely remaining passive throughout the entire period allowed by law for her to choose between the two alternatives

Ludington vs. Patton and others.

presented to her,— to see her lose such rights, reap the benefit thereof himself in whole or in part, and stand guiltless in law and in equity, as a person may, under some circumstances, see a person perish without making an effort to prevent it, reap the advantages thereby flowing to him, and stand guiltless so far as human law can reach.

Shocking as that is to a high moral sense of right and wrong, it must be admitted that the purpose of the statute (sec. 2172, Stats. 1898) providing that when a widow is put to her election as to whether she will take under the law or the will of her husband, she shall be deemed to have chosen the latter unless she files in the court having jurisdiction of the settlement of the estate, within one year after the filing of the petition for the probate of the will, a notice in writing that she elects to take the former, was to relieve the settlement of estates from the uncertainties that existed at the common law by reason of the equitable doctrine as to the time when a widow must make an election in the circumstances stated, and the binding effect thereof; that it was intended to operate as a statute of limitation, fixing with certainty a time, deemed by legislative wisdom to be reasonable, within which a widow must assert, by an affirmative act as indicated, her intention to take the rights secured to her by law in her husband's estate, or suffer the penalty of their irretrievable loss. Further, it must be admitted that such statute should be given the same force and effect as any other statute of limitations. There are no two rules governing such statutes. Equity deals the same with one as with another. It must be held, when fully run in a given case, to have absolutely extinguished the right upon which it has operated, and created in those in whose favor it has run a new right of equal dignity, as regards legal and equitable cognizance, with the one displaced by law. *Eingartner v. Illinois S. Co.* 103 Wis. 373. Such being the case, the statute in question must be en-

forced to its full effect, the same as any other limitation act, regardless of the hardship thereby inflicted in any particular case, unless circumstances exist precluding its being insisted upon under the doctrine of equitable estoppel.

What is said in the two cases above referred to, where statutes similar to ours were considered, is in perfect harmony with the decisions of this court on the same subject. In *Van Steenwyck v. Washburn*, 59 Wis. 483, the statute under consideration was held to apply even where the person put to her election was disabled from taking any action whatever by reason of her insanity. It would hardly be possible to suggest a more harsh operation of a statute of limitations than that. It was said, in deciding the case, that though such an application of the law is contrary to judicial notions of right and justice, the principle must control, that where no exception is made, in a statute of limitations, to protect the interests of the weak and helpless, the court is powerless to remedy the difficulty, since to attempt to judicially supply a remedy would be to turn aside from the judicial function and invade that of the legislature. Such is the law as declared by the courts with but very few exceptions. So far as the general principle mentioned is concerned, they are all in harmony. Courts cannot vary the effect of a statute of limitations in any case because of mere hardship. If the law be not so unreasonable as to violate constitutional rights of property, it must be enforced as written, regardless of judicial notions of whether it is right or wrong tested by a correct standard of legislative policy. Many instances are reported in the books where that doctrine has been as rigorously applied to statutes similar to the one under consideration as by this court in the case cited. *Fosher v. Guilliams*, 120 Ind. 172; *Church v. McLaren*, 85 Wis. 122; *Sherman v. Newton*, 6 Gray, 307; *Boone's Representatives v. Boone*, 3 Har. & McH. 95; *Hinton v. Hinton*, 6 Ired. Law, 274; *Lewis v. Lewis*, 7 Ired. Law, 72; *Col-*

*lins v. Carman*, 5 Md. 503, 524; *Heavenridge v. Nelson*, 56 Ind. 90, 93; *Pinkerton v. Sargent*, 102 Mass. 568.

Some states are more regardful than this state of the probability that a widow may not have capacity to act upon her own judgment in such an important matter as that under consideration, by providing by statute for her protection against ignorance and mistake. Provision is made, either that some person appointed by the court shall investigate the situation and act for the widow, so as to secure that which will be the most valuable to her, or that a guardian shall be appointed to act for her, or that she shall act only upon receiving full information of her rights by the executor or the judge of the court having supervision of the settlement of the estate, or that if she make an improvident election without negligence and through ignorance of the facts she may make a new election (Code Ga. [1882], § 1766; *Johnston v. Duncan*, 67 Ga. 61; Rev. Code Del. [1874], 534, § 7; Code N. C. [1883], § 2108; Ann. Stats. Ohio [1897], § 5966); while other states have held that equity may, for good cause, even where no fraud is claimed, extend the time for making the election, contrary to the rule heretofore discussed, or allow an election to be withdrawn or changed even after the expiration of the time limited by law for making such election (*U. S. v. Duncan*, 4 McLean, 99; *Smither v. Smither's Ex'r*, 9 Bush, 230; *Grider v. Eubanks*, 12 Bush, 510). In *U. S. v. Duncan* the court had under consideration the right of a widow in the estate of her husband under the statutes of Illinois. Provision was made for her in the will. The statute required her to elect substantially in the manner required by the statute of this state, the time, however, being limited to six months. She failed to make her election because of her 'utter ignorance of her husband's estate and her want of means within the time limited to discover the facts so as to enable her to act intelligently in regard to the matter.' The court treated

the statute as so unreasonable when applied to the case in hand, and understood in the literal sense of the words thereof, that a case was presented calling for judicial construction; and in that view it was held, in effect, that the court was permitted to say, on equitable principles, when a statute should and when it should not bar a widow's rights. This language was used: "From the nature of the case it must be perceived that there are cases in which the election could not be made in six months, and it would not be extending the principles of equity beyond their limits in such case of hardship, to relieve a widow." The character of the statute as one of limitations calling for enforcement like any other of its kind, and the well-settled principle that a court of equity cannot ingraft exceptions upon such statutes to suit its notions of right and justice, were not recognized in that decision, nor in subsequent decisions, some of which, cited to our attention in the briefs of counsel, refer to *U. S. v. Duncan* for authority. It needs no discussion to demonstrate that, under no circumstances, except such as create an equitable estoppel, can a person benefited by a completed period of limitation be precluded from insisting upon that benefit. Courts of equity as well as courts of law, and the legislature as well, are powerless to take that right away, as indicated by this court in *Van Steenwyck v. Washburn,* 59 Wis. 483.

No further discussion of this subject seems necessary. The decisions cited to our attention in the briefs of counsel for appellant, to sustain the theory that a court of equity has power to relieve a widow from the effect of an election or failure to elect to take the provision made for her by law instead of the one made for her by her husband's will, because of mere ignorance or mistake on her part, cannot be followed. They are out of harmony with the doctrine of this and most courts. So rigorously has the latter doctrine, where fully recognized, been enforced, that, even in the face

of a statute expressly requiring the judge of the probate court to call the widow's attention to her right of election, it has been held that his failure to do so and her failure to elect through ignorance do not operate to extend the time given her by law to make her election. *Price v. Woodford,* 43 Mo. 247, 253; *Ewing v. Ewing,* 44 Mo. 23. In *Price v. Woodford* it was said:

" The law expressly declares that if the election is not made and the declaration properly acknowledged and filed, within twelve months from the granting of the letters, the right shall not exist. . . . This language is express and positive. . . . Because for convenience and as a favor to the widow the legislature directed that the court should cause notice to be given to her, it is not to be presumed that they intended to abrogate the maxim that every person is presumed to know the law."

The contention of respondents' counsel that the executors of the estate of Gov. Ludington had a legal and equitable right, if they saw fit, to remain passive for the year subsequent to the admission of the will to probate, conscious that by so doing the appellant, through her ignorance, would lose her widow's rights under the law, and that they and the Ludington children would be greatly enriched by such loss, must be sustained.

The foregoing conclusion goes as far in sustaining the contention of counsel for respondents, that the trial court erred in deciding that *Patton* and Van Schaick breached their duty to appellant in failing to inform her or put her in the way of informing herself as to what was the best course to pursue as regards her husband's estate, and in dealing with her to her disadvantage, as any of the authorities upon which they rely. All of such authorities speak of some passive failure, so to speak, to inform the widow, unaccompanied by any dealing with her to her disadvantage. The trial court did not decide that such conduct would be a breach of duty of an executor or trustee of an estate circumstanced as were

Mr. Van Schaick and *Mr. Patton.* The finding is based on the fact that they knowingly dealt with appellant and obtained, by purchase, her rights in the trust estate to her disadvantage, and to the advantage of those whom they stood for in common with her, but whose interests depended materially upon her conduct. There is the real mischief complained of. There is the circumstance of governing importance in this case upon which the finding of the learned judge of the superior court, that Van Schaick and *Patton* failed to perform their duty to appellant, is based.

The learned counsel for appellant who orally argued the case before this court freely conceded that if the executors and trustees had merely remained passive till appellant lost the interest in her husband's estate secured to her by law, through ignorance of her rights, they could hold the gains thereby obtained for the benefit of the heirs, free from any taint of wrong of sufficient significance that the court could take notice thereof, however much such conduct, under the circumstances, might be said to violate mere ethical rules of conduct; but it was insisted that when they undertook to induce appellant to bargain away to them her property, of which they were the trustees, for the benefit of the heirs and in a measure for their own benefit, they could no longer keep silent consistently with their duty to appellant, but were bound to make to her the fullest and amplest disclosure of all the facts within their knowledge, to her advantage to know, and not to acquire her property at all to her disadvantage. That was what the trial court decided. That is what counsel for respondents must successfully meet in order to demonstrate that the trial court was wrong in holding that the executors breached their duty to appellant in failing to correctly inform her of the value of the estate and of her legal rights therein and the manner of securing such rights if she so desired. In this the trial court followed the elementary principle that a trustee cannot bind his *cestui*

*que trust* irrevocably by contract made with him to his disadvantage, especially where there is any reasonable ground to say that the contracting parties were not on an equality in the transaction.

We have been unable to discover, either in principle or authority, or in anything suggested by the learned counsel for respondents, any satisfactory answer to that proposition as applied to this case. It is useless to argue that the relations of trustee and *cestui que trust*, to all intents and purposes, did not exist between appellant and Van Schaick and *Patton* at the time of the transaction in question, or that the relation of trust and confidence did not exist between them independently of the fact that they were the chosen of Gov. Ludington to administer his estate. It is useless to spend time considering the suggestion that appellant had her son by her side and that she herself was presumed to know the law, so far as the truth or fallacy of such suggestion affects the right of the executors to deal with her as they did. Appellant did not rely at all upon her son in any business affair. · The executors were fully cognizant of that situation. They did not at any time, as the court found, regard him as of any importance or take him into consideration in any way in anything they did or failed to do. Both were members of the Ludington family by marriage. They knew that appellant was entirely unacquainted with business affairs. She had been a faithful wife and affectionate companion of Gov. Ludington for sixteen years, during which time she had done her part to maintain a home for him and his children, where all came or dwelt, as appears, with freedom and cordiality, evincing close family relations between them. She was left surrounded by those children, some of whom she had helped to rear. She had learned to know the executors, not only as members of her family, but as able business men. She trusted them implicitly, and it was most natural for her to do so. They knew that such

was her state of mind, or ought to have known it, and that what she did was simply to adopt their suggestions. Their acts were her acts. She did not even venture to suggest an opinion as to the provision made for her by the will when it was read, except by way of substantially echoing the suggestion made by Mr. Van Schaick. When they presented the offer to increase the provisions made for her by the will, she accepted it without argument or inquiry as to details. She signed every paper that was presented to her, in a way to indicate entire want of independent judgment. The executors and her attorney told her what she should do and she followed their directions with the most childlike confidence, evincing an utter want of independent judgment as to what was and what was not for her advantage. Notwithstanding the evidence of *Mr. Patton* that he supposed she was capable of looking after her own interests and was fully posted, the circumstances, which are in full accord with the findings of the court, all point the other way. They lead irresistibly to the conclusion that, from first to last, appellant did, without any adequate knowledge or appreciation whatever of her legal rights, whatever was suggested to her by Van Schaick and *Patton*. They could not reasonably have been unconscious of the fact that she was in their hands, a mere victim of their suggestions, ready to follow their every wish as if it were the very thing for her to do. To say, under those circumstances, independently of their relation to her as executors and trustees of the estate, that they did not owe her the duty of guarding her interests in the estate and of informing her fully in respect to her rights and how to protect them, before entering into a one-sided deal with her to acquire her property at an advantage to the heirs and to her disadvantage, would be to run counter to one of the most familiar principles of law governing the duty of trustees to their *cestui que trust*, and of persons towards others between whom exist such relations of trust

and confidence as to preclude such others from the exercise of independent judgment.

No rule is better established than that, if a trustee or a person standing in relations of trust and confidence to another deal with the *cestui que trust* or such other in respect to the subject of such trust, for his own benefit or that of others whom he represents, serving two persons at the same time, in form, when in contemplation of law he can serve but one loyally, the transaction cannot be upheld if called in question by the *cestui que trust*, unless the trustee is able to prove to the satisfaction of the court by clear and satisfactory evidence that the two were at arm's length in the transaction, that no confidence was reposed in him by the beneficiary, that the bargain was profitable to the beneficiary, and that he was fully informed in regard to the value of the property and the nature of his interest in it. Beach, Trusts, § 518; *Puzey v. Senier*, 9 Wis. 370; *Roller v. Spilmore*, 13 Wis. 29; *Barker v. Barker*, 14 Wis. 131; *Cook v. Berlin W. M. Co.* 43 Wis. 433; *Davis v. Dean*, 66 Wis. 100; *Creamer v. Ingalls*, 89 Wis. 112; *Disch v. Timm*, 101 Wis. 179; *Saunders v. Richard*, 35 Fla. 28; *Spencer's Appeal*, 80 Pa. St. 317; *Brown v. Cowell*, 116 Mass. 461; *Re Hodges' Estate*, 63 Vt. 661; *Cole v. Stokes*, 113 N. C. 270; *Mills v. Mills*, 63 Fed. Rep. 511; 1 Story, Eq. Jur. § 321. The policy of the law is to regard all transactions of a contract nature, between a trustee and his *cestui que trust*, whereby the former obtains the interest of the latter, or some part thereof, in the subject of the trust, as presumptively fraudulent and void at the election of the latter. If such a transaction be permitted to stand it is upon condition that the trustee satisfies the court, fully and completely, that the *cestui que trust* received a full equivalent for that which he parted with, and that the transaction was to his advantage rather than to his disadvantage. The burden of proof in such a case rests upon the trustee to

clearly free himself from the imputation of fraud arising from the facts, and the same is true where a person deals to his own advantage with a person with whom he sustains relations of trust and confidence. The obligation of disclosure, and to protect the interests of the weak or trusting, is the same in one case as in the other.

"It is the language of all the authorities that such a transaction is always scrutinized in a court of equity with a watchful eye, and will not be sustained to the disadvantage of the *cestui que trust* except upon the most complete and satisfactory evidence of good faith and fair dealing on the part of the trustee." *Puzey v. Senier*, 9 Wis. 376.

The following illustrations of the result of abuse of confidential relations are in point:

"The rule is universal that, where a person to be benefited by a will or a voluntary deed has a controlling agency or influence in procuring its execution, it is regarded as a very suspicious circumstance, requiring the fullest explanation. Especially is this so where there exists a confidential relation, as . . . even that existing between a neighbor and near friend." *Disch v. Timm*, 101 Wis. 179.

'It would not be controverted that an executor or administrator is subject to all the responsibilities as regards beneficiaries under the will, as is the strict trustee to the *cestui que trust.*' *Tatum v. McLellan*, 50 Miss. 1.

"It is only when it is made to appear to the entire satisfaction of the court that the beneficiary had full knowledge of all the facts . . . and acted therein advisedly and without undue influence, that a contract of this character, between the trustee and the beneficiary (to the benefit of the former) will be sustained." 'Mere proof that the beneficiary was of sound mind and fully understood the nature and effect of the contract will not avail, in the absence of anything to show that he had an adequate knowledge of the matters covered by the contract.' *In re Hodges' Estate,* 63 Vt. 661.

The trustee must show, "by unimpeachable and convincing evidence that the beneficiary, being *sui juris*, had full information and complete understanding of all the facts concerning the property and the transaction itself, and the person with whom he was dealing, and gave a perfectly

free consent, and that the price paid was fair and adequate, and that he made to the beneficiary a perfectly honest and complete disclosure of all the knowledge and information concerning the property possessed by himself or which he might, with reasonable diligence, have possessed." 2 Pomeroy, Eq. Jur. § 958.

"A trustee may buy from the *cestui que trust*, provided there is a distinct and clear contract, ascertained to be such after a jealous and scrupulous examination of all the circumstances, providing that the *cestui que trust* intended the trustee should buy, and there is no fraud, no concealment, no advantage taken by the trustee of information acquired by him in the character of trustee," — that the trustee took no advantage whatever of his situation, and that he gave his *cestui que trust* all the information which he possessed. Lord ELDON in *Coles v. Trecothick*, 9 Ves. 247.

More need not be said to demonstrate the correctness of the decision of the trial court that Van Schaick and *Patton* wronged appellant in failing, under the circumstances, to disclose to her as fully as they reasonably could the nature and value of her interest in her husband's estate and the steps necessary to be taken by her to preserve that interest if she desired to do so. For the purposes of this case, whether the validity of the contract, whereby appellant parted with such interest, turns on mere relations of trust and confidence having existed between her and Van Schaick and *Patton* when the contract was made, or the legal relations of trustee and *cestui que trust* under the will, it is not necessary to inquire, nor to decide whether their conduct was characterized by a distinct purpose to defraud appellant. From the fact that the transaction in question was pecuniarily injurious to appellant and the circumstance of the existence of either of the relations mentioned, a presumption of fraud arises which must prevail, even if only the first relation mentioned existed, in the absence of evidence showing affirmatively that appellant dealt with a full understanding and appreciation of her rights, and must pre-

vail at her election in any event, since the relation of trustee and *cestui que trust* existed, and, unless some statute of limitations or act of appellant bars the way, result in restoring her to her rights the same as if the fraudulent transaction had never occurred, or accomplish such restoration in effect by charging the trustees under the will, who are in possession of the estate, as constructive trustees thereof for appellant, to the extent of the loss she would otherwise sustain.

"The general rule is, that the trustee shall not take beneficially by gift or purchase from the *cestui que trust*, even although the supposed trustee and purchaser is a mere intermeddler and not a regularly recognized trustee; the question is not whether or not there is fraud in fact, the law stamps the purchase by the trustee as fraudulent *per se*, to remove all temptation to collusion and prevent the necessity of intricate inquiries in which evil would often escape detection and the cost of which would be great. The law looks only to the facts of the relation and the purchase." Perry, Trusts, § 195.

We should say in passing that a trustee can no more deal with one for whom he stands, and to the disadvantage of that one for the benefit of himself as the representative of others, than he can for the benefit of himself absolutely. There can be, in the very nature of things, no difference between disability to deal in the one case and in the other.

It is conceded that appellant had but six years after the discovery of the fraud alleged to have been perpetrated upon her, within which to seek relief. Sec. 4222, Stats. 1898. Counsel for respondents challenge the finding of the trial court on this branch of the case, claiming that the evidence shows conclusively that appellant knew, or by the exercise of ordinary care might have known, of all the facts affecting her rights more than six years before the commencement of this action. It must be conceded that the statute of limitations commenced to run against appellant from the time she obtained knowledge of the fraud or might have obtained such knowledge by the exercise of reasonable diligence. We

Ludington vs. Patton and others.

do not deem it necessary to say more on this subject than that the trial court applied right rules of law to the evidence, and that the findings of fact are too well supported by such evidence to permit of their disturbance. It may be that, so far as relates to the mere value of the estate, appellant received sufficient information more than six years before the commencement of this action to start the statute of limitations running against her. But the evidence pretty clearly shows that the executors created, or cultivated, an impression in appellant's mind that she was bound by the will and was dependent upon the pleasure of the heirs for any provision that might be made for her other than that therein contained. Her legal rights were not considered with her or suggested to her, and, according to the testimony of *Mr. Patton*, they were not taken into consideration by himself, Van Schaick, and the heirs, or any of them. The executors approached appellant in the attitude of persons conferring a favor upon her, when they must have known that the result of success of their effort to contract with her would be so take from her upwards of three dollars for one. When they approached her with the proposition to increase her allowance out of the estate, they did so with the air of persons making a sacrifice for her benefit. She received them in that spirit and with the impression upon her mind that she was the beneficiary of the heirs. She accepted the offer made to her, and signed the instrument conveying her rights in the estate to the executors and trustees, while still under the delusion that she was a beneficiary of the heirs, when in fact the very opposite was the situation. That impression was firmly fixed in appellant's mind when she consummated the transaction by signing the written conveyance, by the attorney for the executors, who, she supposed and had good reason to suppose, was acting in her interests. She testified that she understood from him that she got the increase over the amount named in the will by the generosity of the heirs,

and that she was very fortunate in obtaining such a contract. Just what was said between them is in dispute, but the impression made upon appellant's mind by what was said is pretty clearly what she said it was. There can be no reasonable doubt, it seems from the evidence, but that the executors and trustees dealt with appellant knowing that they were giving her a very inadequate consideration for what they were receiving; that they were really obtaining the larger amount of appellant's property without consideration; that they were accomplishing that result while she was under the impression that she was being greatly benefited, and by the generosity of the heirs of the Ludington estate. There was the great wrong that was committed. Mere knowledge on the part of appellant of the value of the estate, subsequently obtained, did not remove from her mind or tend to remove the false impression that she was obliged to take what was given to her by the will and such additional amount as the heirs, in their generosity, might see fit to give to her out of the property, and that they had treated her generously; while the effect of the transaction was not the giving to her by them of any part of their property, but was the giving to them by her of the greater part of her property. It seems that the executors were largely if not wholly responsible for that false impression, and that it was controlling in appellant's mind in signing away her rights. The evidence does not show that such impression was removed from her mind, actually or constructively, till shortly before this action was commenced.

The fact that such false impression was a mistake of law does not militate against appellant's right to relief in equity. One of the most familiar of the many exceptions to the general rule that courts will not relieve against mistakes of law, is the one that such mistakes are relievable as readily as mistakes of fact where the transaction is between trustee and *cestui que trust* or persons standing in analogous

relations, when otherwise the general rule would enable one person, by reason of the trust reposed in him, to successfully perpetrate a fraud upon another. Story, Eq. Jur. (13th ed.), 144, 145; 2 Pomeroy, Eq. Jur. § 848. The real ground for relief in such cases is fraud, actual or constructive. *Tompkins v. Hollister*, 60 Mich. 470; *Voltz v. Voltz*, 75 Ala. 555; *Light v. Light*, 21 Pa. St. 407.

It is suggested that appellant forfeited her right to the aid of equity by delay in asserting her claim, independent of the statute of limitations. We are unable to sustain that view. Any mere delay, short of the statutory period for commencing an action in equity, does not bar the right involved. We are unable to discover any evidence in this case that defendants were prejudiced in any material particular by the failure of appellant to commence this action at the very earliest moment the evidence shows she was possessed of the requisite knowledge or was bound to be so possessed.

But it is said appellant did not restore to the estate what she received therefrom under the contract she seeks to avoid, and that such restoration was a condition precedent to her right to commence this action. The doctrine, that in case of a contract voidable upon the ground of fraud the injured party must totally rescind it and restore to the guilty party all that he received from him as a condition precedent to the right to recover what he parted with, is based on the rule that, by the injured party retaining what he received and suing to recover what he parted with thereafter, he occupies inconsistent and inequitable positions which the law will not permit. · That is a general rule applicable to legal actions which proceed upon the theory of a precedent rescission. But even in such actions the rule is subject to some exceptions. *Friend Bros. C. Co. v. Hulbert*, 98 Wis. 183; *Gay v. D. M. Osborne & Co.* 102 Wis. 641. It does not apply in any arbitrary way at all to actions in equity for the

Ludington vs. Patton and others.

rescission of contracts. In such actions the plaintiff does not proceed upon the theory of a contract already avoided on the ground of fraud, but upon the theory that the jurisdiction of equity is needed to accomplish that end and to give such incidental relief as the plaintiff may be entitled to. It is sufficient in such a case to show by the complaint a willingness to do equity. The distinction must be kept in mind, in order to properly apply the rule under consideration, between an action in equity to rescind a contract and the rescission of the contract by the act of the party followed by an action at law for a recovery by such party of the money or property he parted with upon the faith of such contract. *Kirby v. Harrison*, 2 Ohio St. 326; 18 Ency. of Pl. & Pr. 837; *Thomas v. Beals*, 154 Mass. 51; *Shuee v. Shuee*, 100 Ind. 477; *Clapp v. Greenlee*, 100 Iowa, 586; *Maloy v. Berkin*, 11 Mont. 138. In *Thomas v. Beals*, the court, speaking by Mr. Justice HOLMES, said:

"There was no necessity for an offer to return the consideration before the bill was brought. A bill in equity is not like an action at law, brought on the footing of a rescission previously completed. . . . The foundation of the bill is that the rescission is not complete, and it asks the aid of the court to make it so."

The distinction above referred to has not been definitely observed in this court, though our decisions, in the main, are in substantial harmony therewith. *Weed v. Page*, 7 Wis. 503; *Hendricks v. Goodrich*, 15 Wis. 679; *Hyslip v. French*, 52 Wis. 513; *Friend Bros. C. Co. v. Hulbert*, 98 Wis. 183; *Gay v. D. M. Osborne & Co.* 102 Wis. 641; and *Gates v. Raymond*, 106 Wis. 657,— were actions at law. In each, a total rescission of the contract and return of the money or property received thereunder, or such rescission and an offer to make such return, was held necessary, except where the contract was severable so that no injustice would be done the guilty party by the contract being considered severable and discharged in part by payments made thereon, and sub-

ject to rescission as to the balance, or where restoration of the property received by the plaintiff upon the contract was rendered impossible by the wrongful conduct of the defendant. In the latter class of cases it was said that the doctrine of rescission and restoration, as a condition precedent. to an action at law, is based on equitable principles, and to be applied only so far as equity and good conscience require. *Grant v. Law*, 29 Wis. 99, was an action in equity for rescission. The judgment was reversed, not because there was a failure to rescind the contract and restore or offer to restore what the plaintiff received thereon before the action was commenced, but because the judgment did not provide for such rescission and restoration. The case is somewhat misleading from the fact that the supporting authorities cited are, in the main, decisions in actions at law. *Becker v. Trickel*, 80 Wis. 484, was an action in equity for rescission, and the court applied the doctrine that obtains in actions at law upon the theory, apparently, that rescission and restoration or offer to restore must precede an action in equity as well as an action at law. The only authority cited is *Hoffman v. King*, 70 Wis. 372, which was an action at law. It seems that the omission to observe the distinction between an action for rescission and an action based on rescission was a palpable mistake. In *Paetz v. Stoppleman*, 75 Wis. 510, the equitable doctrine was fully recognized. It was contended by counsel for the plaintiff that restoration in equity in case of fraud is not imperative, and the court approved that view. Among the authorities cited to the attention of the court was *Gould v. Cayuga Co. Nat. Bank*, 86 N. Y. 75, where this language was used:

" The defrauded party need not rescind and sue in an action at law for the consideration parted with upon the fraudulent contract. He may bring an action in equity to rescind the contract, and in that action may have full relief. Such an action does not proceed as upon a rescission, but proceeds for a rescission. In such a case it is sufficient

for the plaintiff to offer in his complaint to restore to the defendant what he received, and the rights of the parties can be fully regulated and protected in the judgment to be entered."

The great weight of authority is in accordance with the case last cited. It is sufficient in an action for rescission to show by the complaint a willingness to do equity, to submit to a complete rescission, so far as practicable, and to make the defendant good for what was received from him, in such manner as the court may direct. *Thackrah v. Haas,* 119 U. S. 499. The court having jurisdiction of the whole subject and the parties can do complete equity between them. It can compel full restoration to the defendant *in specie,* so far as justice requires, as a condition for rescission, and may deny or give costs, having regard to the necessity of resorting to litigation for the relief finally awarded.

This fully meets counsel's contention that restoration by appellant of what she had received under, and complete disaffirmance of, the contract in question, was a condition precedent to the maintenance of this action to avoid it. The complaint shows willingness to account for everything appellant has received, and in that it shows willingness to do equity, satisfying all the essentials of the right to invoke equity. If the complaint had not been so framed as to show such willingness, the defect could only have been reached by a demurrer for insufficiency on the particular ground that a cause of action in equity was not stated for the reason that plaintiff failed to show a willingness to do equity. *Taylor v. Fulks' Adm'r* (Ky.), 29 S. W. Rep. 349; *Ormsby v. Budd,* 72 Iowa, 80; *Newman v. Smith,* 77 Cal. 22.

A further contention is made that the judgment should be affirmed regardless of the ground upon which it was rendered, because the proper forum to consider the subject of the action was the probate court of Milwaukee county, and that the judgment of such court assigning the estate to the

trustees is conclusive as to the title thereto till reversed or opened in some proper proceeding. It is a sufficient answer to the first part of such contention, that the general equity jurisdiction of the superior court of Milwaukee county, under the statute creating it, is the same as that of the circuit court in respect to the subject of the settlement of estates, and that it is proper for such jurisdiction to be exercised when the circumstances are such that it can furnish a more complete and effective remedy than can be obtained in the probate court. *Meyer v. Garthwaite*, 92 Wis. 571; *In re Klein*, 95 Wis. 246; *Burnham v. Norton*, 100 Wis. 8. The second part of counsel's contention is sufficiently answered by the fact that this action does not question, collaterally or otherwise, the decree, so called, of the county court, but it is a proceeding against the parties to that decree to rescind a contract upon the ground of fraud, which stood in the way of appellant's asserting her rights in the proceedings in which the decree was entered. The judgment here sought, if obtained, will not vacate, modify, or affect the judgment of the county court, but will bear upon the parties to that judgment and prevent them from enjoying the fruits of their fraud. The jurisdiction of equity is ample for that purpose, as held in *Crowns v. Forest L. Co.* 102 Wis. 97.

It is further contended that the judgment of dismissal should be affirmed because the evidence shows that the case was fatally tainted with champerty. There is some support for that claim in the evidence of appellant, but it seems reasonably clear that the real contract between her and her attorney was embodied in a writing which was offered and received in evidence, and which is free from anything looking like champerty. It is unnecessary to state here the precise terms of that written contract. We are only required to determine whether it embodied the real agreement between her and her attorneys and is free from any cham-

Ludington vs. Patton and others.

pertous feature. If we were to consider the other features. of the contract at all it would doubtless only confirm impressions gathered from all the other transactions in which appellant figured, the history of which appears in the record, that she customarily exercises little or no judgment in. business matters and is easily led into making improvident. contracts by any person having her confidence,— that she exercises very little or no independent judgment in such. matters.

The further contention is made that the commencement. of the actions at law, or either of them, against respondents. for damages for the alleged fraud upon the theory of an existing contract, constituted an election to abide thereby, and a bar to the maintenance of this action to rescind. In that. the familiar principle was invoked that if a person has inconsistent remedies the choice of one, generally, constitutes. an irrevocable waiver of the others. *Bank of Lodi v. Washburn E. L. & P. Co.* 98 Wis. 547; *Carroll v. Fethers*, 102 Wis. 436; *Fuller-Warren Co. v. Harter*, 110 Wis. 80. Counsel for appellant reply that the rule in this case operates the very reverse from what counsel for respondents contend for; that appellant first elected to rescind the contract by the commencement of this action, and that its pendency was. pleadable in bar of the actions at law. Counsel for respondents seek to escape from that position by pointing to their argument that appellant did not rescind the contract before the commencement of this action, therefore that the first election was the commencement of an action at law for damages. The infirmity of that contention has been clearly shown. The commencement of an action in equity to obtain a rescission of a contract does not require a precedent rescission. It is just as effective an election as a rescission by act of the party followed by an action upon the theory that the original situation of the parties, so far as legal. rights are concerned, has been thereby restored. The appli-

cation of the binding effect of a choice of inconsistent remedies contended for does not appear to have support in principle or authority.

What has been said covers all the contentions of respondents' counsel that the judgment appealed from should be affirmed, regardless of the points decided by the trial court, which are deemed of sufficient importance to require special mention. Those not referred to have been considered. The findings of fact, so far as adverse to respondents, must stand as verities in the case.

From appellant's standpoint the situation is the same, but it seems that, in addition to the facts found, the court should have decided in accordance with requests made by appellant's counsel, that she was prevented from discovering and seasonably asserting her legal rights in her husband's estate by the fraud practiced upon her by the executors and trustees. It seems that such must be the correct conclusion from the evidence and the facts found. As we have heretofore stated, the executors cultivated if they did not create in the mind of appellant the idea that she was dependent upon the favor of the heirs for anything she might obtain out of the estate in addition to the provision made for her in the will. The attorney for the trustees, because of his former position as adviser of Gov. Ludington, in approaching appellant in a manner naturally calculated to inspire confidence that he was guarding her interests, confirmed the impression in her mind that the paper he presented for her signature was at least not against her interests. She testified that he expressly stated that the bargain she had made and which was embodied in the paper was good for her and that she was fortunate in the matter. He denied making any such statement, and we may pass the matter over as not proved. Nevertheless, the evidence shows, as the fact is according to the decision of the court, that when the paper was signed appellant supposed the attorney who presented it was rep-

resenting her interests as well as those of the Ludington children; that she was effectually imposed upon in that regard; that the attorney made no effort to disabuse her mind of such delusion and no effective effort to enable her to understand the instrument she was requested to sign, though, from her manner, it was apparent that she was completely submissive to whatever she was requested to do, evincing clearly that she was blindly trusting in those with whom she was dealing. The evidence further shows, as the court found, in effect, that all the parties concerned in obtaining the contract led appellant to believe that she was a fortunate recipient of a valuable favor from the heirs, when she was in fact the injured victim of misplaced confidence. The executors not only failed to inform her of her legal rights in breach of their duty to her, but they created the condition which naturally tended to prevent her from otherwise discovering such rights. Considering the fact that she knew nothing about business matters, was left entirely dependent for her future support upon what she might receive from her husband's estate, and was naturally disposed to follow the counsels of her husband's family and those who had stood near to him as advisers and business associates, as the executors and trustees must have known, no plan could have been adopted by deliberate scheming better calculated to prevent appellant from obtaining what was hers by law than the one that was resorted to.

We will say here in passing that we do not decide that there was such scheming or any wicked purpose to injure appellant in the transaction under consideration. We go so far only as to decide that appellant was misled in a manner to impose legal responsibility on the trustees the same, substantially, as if the injury inflicted was intended. Before she had time after her husband's funeral to reflect at all over her situation, or obtain needed rest to enable her to act considerately, on the very afternoon of the burial, the will

was read.  That was immediately followed by a suggestion
by Mr. Van Schaick that the provision for appellant was
inadequate, which she echoed.  He and *Patton* then pro-
posed to look after her interests, as she understood it, and
she submitted to their guidance.  The same afternoon, with-
out giving appellant any information of her legal rights or
suggesting that she obtain any information, or giving her
any time for that purpose, they approached her with the
plan which involved the surrender of her statutory rights,
pretending just as effectually by their attitude in the matter
as they could have expressed in words, that it contemplated
the bestowal upon her of so large a consideration for her
interest in the estate as to make her really a beneficiary of
the heirs.  She unhesitatingly accepted the plan laid before
her with that understanding, and thus, before the first set-
ting of the sun after the funeral, without opportunity for
rest or reflection or the exercise of judgment, in utter igno-
rance of her rights or the consequences of what she did, and
with the most implicit confidence in the ability and dispo-
sition of the executors to do what was best for her, as they
well knew or ought to have known, and without any at-
tempt on their part to enlighten her or to do otherwise than
cultivate the idea in her mind that the heirs were her bene-
factors, she agreed to a scheme fixing irrevocably her future
and that of her family as to the property of the Ludington
estate, to her and their injury, in a sum which of itself must
be considered, at the least, a large fortune.  That being ac-
complished, the executors further arranged that appellant
should sign all papers necessary to fully consummate it, and
that she should participate in the proceedings to probate
the will by signing the petition therefor.  They then caused
an attorney to prepare and present papers for her signature,
covering the agreement, who was best calculated to keep up
the delusion under which appellant was laboring, that she
was being treated with generous favor and with all the con-

sideration that could be expected by one surrounded by members of her own family deeply concerned for her interests. Such is the effect of the findings and the evidence. By the means detailed, appellant was effectually kept within the circle and under the influence of those interested and acting adversely to her, while they were pretending to guard her interests, till they not only acquired her rights in the estate but strongly fortified their position against danger of her becoming suspicious that she had been dealt with injuriously. Unhandsome as the picture is, from a moral standpoint, and much as we might wish to avoid thus exhibiting it, truth and justice require the portrayal, and charity has guided the hand that it might under rather than over shade, so far as judicial duty will permit.

How it can be said, under the circumstances which we have detailed, that the executors and trustees did not prevent appellant from discovering her legal rights, we are unable to understand. True, as the trial court found, appellant never intended or determined to elect to take the provision made for her by law; but if the reason thereof be found in the conduct of the executors and trustees, we must consider the situation the same as if such intent was formed. We cannot doubt, reasonably, but that, if such conduct had been proper appellant would have elected to stand upon her legal rights rather than to accept the offer made to her in the will or by the heirs. In determining that question we look at all the circumstances of the case in the light of reason and common experience. Appellant had always been surrounded by wealth and would naturally have rebelled against anything that threatened to materially change her situation in that regard had she appreciated the danger. She gave up the income from property valued at $80,000 for the privilege of becoming the wife of Gov. Ludington. She had two children by her former husband to whom she was warmly attached and whose comfort and prosperity she

was desirous to promote. There was no tie left to bind her to the Ludington family. She proposed separating herself from any close association with them and to take up her residence in the city of Chicago surrounded by or associated with the members of her own family. Such separation in fact did take place, and there has been no association of appellant with the Ludington children since about the time the contract in question was made. Appellant had every reason to desire to hold all that was legally hers for the benefit of herself and children, and no reason, as appears, to desire or consent to part with her property for the benefit of the Ludington heirs. We must assume that, had she appreciated her rights, she would have acted as people ordinarily act under the same or similar circumstances. We cannot escape the conclusion, reasonably, that had the executors, when they approached her to procure her interest in the estate, so informed her of the situation as to enable her to contrast the value of such interest, understandingly, with what they proposed to give her for it, the former being unquestionably more than double the value of the latter, she would unhesitatingly have chosen the former; and that they, as men of large experience in business affairs, must have known that when she accepted their proposition she did so in complete subservience to their will, not through the exercise of her own judgment; and that, instead of its being beneficial to her from a pecuniary standpoint, it was highly injurious to her.

In this we do not ignore, wholly, the statement made in the will that the provision there made for the appellant was satisfactory to her and was embodied in the will by agreement between her and the testator. If any conversation to that effect ever occurred between the parties, it is evident that it made no impression on appellant's mind which she retained, for upwards of three years which intervened between its occurrence and the reading of the will. Further,

it is evident that if such an occurrence took place she had then no appreciation of the value of her legal rights. In any event, such an agreement, if made, was not binding upon appellant, and is not entitled to any consideration except as explaining her conduct in entering into the contract to part with her legal rights for an inadequate consideration. It seems clear, under all the circumstances, that the reason why appellant did not form an intent to take her statutory rights is that she was kept in ignorance thereof by the conduct of Van Schaick and *Patton*, and that, had she formed such purpose, she would have seasonably executed it. In that view the trustees are chargeable with having fraudulently prevented appellant from making her election to take the provision made for her by law. The reasoning of the trial court that the executors wrongfully withheld from appellant the knowledge necessary for her to possess in order to pass intelligently upon the question of whether to elect to take under the statute or not, and yet that they may escape responsibility because no purpose to so take was formed, does not meet our approval. We must hold that such trustees are chargeable with having prevented all that would probably have occurred had their conduct been what it ought to have been, and that those things would have occurred which ordinarily take place under similar circumstances; that is, that appellant would not only have formed a purpose to take the provision made for her by law, but that she would have executed such purpose. Her failure to do so resulted in increasing the value of the trust estate now in the hands of the trustees, over what it otherwise would have been, to the extent of appellant's loss. Can they retain the fruits of their wrongdoing, or their *cestuis que trustent* profit thereby, or is the arm of equity long enough to undo that wrong by restoring appellant to her rights?

The foregoing inquiry indicates that appellant must go

without redress if respondents can successfully invoke the
statute limiting the time for her to renounce the provisions
made for her in the will.   It seems manifest that they can-
not do that unless the court violates the elementary princi-
ples of estoppel, that no man can profit by his own wrong,
*Nullus commodum capere potest de injuria sua propria*
(Beach, Trusts, § 220); and that other principle that, "if a
person be fraudulently prevented from doing an act, it will
be considered in equity as if that act had been done."   Id.
§ 221; *Smart v. Waterhose*, 10 Yerg. 94, 103, 104; *Brook v.
Chappell*, 34 Wis. 405; *Post v. Campbell*, 110 Wis. 378; *Morey
v. Herrick*, 18 Pa. St. 123; *Thompson v. Marley*, 102 Mich.
476; *Curdy v. Berton*, 79 Cal. 420; *Thynn v. Thynn*, 1 Vern.
296; *Middleton v. Middleton*, 1 Jac. & W. 94.

In *Smart v. Waterhose*, which is cited by appellant's coun-
sel, such principles were applied to a case substantially
like the one before us, the only difference being that the
widow was prevented by fraud from making her election
after she had formed a purpose to do so.   But as we have
held that if a person fraudulently prevents the formation of
a purpose to do an act which, if once formed, would prob-
ably be executed, he is in effect guilty of fraudulently pre-
venting the execution of such purpose, the cases must be
considered as in every respect similar.   As in the case at
bar, the actors in the commission of the fraud in the cited
case were the executors.   The widow, the same as here, re-
posed implicit confidence in such executors.   They took ad-
vantage of her condition of mind in that regard, and of her
ignorance, to make with her an unconscionable bargain
whereby she omitted, for the time provided by law, to elect
to take the provision out of her husband's estate secured to
her by statute.   The court summed up the situation and the
law governing it thus:

"This woman has been prevented by the fraud of those
who were interested in the estate from entering her dissent.

She was about to avail herself of the provisions of an act made for her benefit, and the defendants interposed, and by fraud prevented her, and now they set up the consequence of this fraudulent act as a bar to the right she would have obtained; this we think they cannot do. It is a rule laid down and acted on in many cases that where an act has been prevented from being done by fraud, equity will consider it exactly as if it had been done."

That doctrine is fully sustained in the cases upon which the learned counsel for respondents rely to support the judgment appealed from. In *Stephens v. Gibbes*, 14 Fla. 331, 357, relief was denied upon the ground that no fraud was shown, the court saying:

"The statute gives to the widow this time to inform herself of all the circumstances necessary to the exercise of a judicious and discriminating judgment, and if she neglects thus to do, she cannot be relieved of its consequences, *unless her case is brought within that class of cases where a court of equity extends its corrective influence on account of fraud, imposition, misrepresentation, or mistake.*"

The same doctrine was declared in *Akin v. Kellogg*, 119 N. Y. 441, upon which respondents' counsel lean with confidence. That case involved a statute precisely like the one in question, and would be as decisive in favor of respondents as any judicial authority of a sister state could be, were it not that the decision was based on the absence of any satisfactory showing of fraud, it being stated, in effect, that, if such absent element were present, the injured party would have been entitled to relief. In the same line is *Fosher v. Guilliams*, 120 Ind. 172, 175, where the court said:

"If, through any fraud or contrivance of those interested in the estate, the widow was prevented from making an election, a court of equity might find means of affording relief against those who perpetrated the fraud."

So it will be seen that the authorities upon which both sides rely, when applied to the facts as we have found them to be, support the claim of appellant's counsel that the judgment appealed from is erroneous and that a decree should

have been entered granting to appellant such relief as will, so far as practicable, wipe out the effect of the fraud of which she was made the victim. It does not seem that further reference to authorities on the subject is necessary. The governing legal principles are substantially without dispute. Appellant's counsel base her right to recover on the claim that she was prevented from taking the necessary steps to secure the provision out of her husband's estate made for her by law, by the fraud of the executors and trustees, who, in person or by representation, are now before the court and are in possession of the property of the estate. Respondents' counsel claim that the judgment should be affirmed because, as they insist, neither the evidence nor the findings show that the executors and trustees were guilty of any fraud which operated to the injury of appellant. The questions of fact involved in the respective claims mentioned being clearly established in appellant's favor, by well-settled principles of equity jurisprudence the trustees now in possession of the property under the will are chargeable as trustees for appellant by construction, of the property which came into the trust under the will, to the extent which she would have been entitled to had she elected, in due form of law, to take the provision made for her by statute. The trial court grievously erred in holding that one person may extinguish the property rights of another for the benefit of himself or those whom he represents, by wrongfully taking advantage of the weakness or ignorance of such other, and be heard successfully to plead in a court where conscience reigns supreme, "Thou canst not say I did it;" that a person can successfully plead, in such a court, nonperformance of such a condition where he himself wrongfully prevented such performance; and that a person may wrongfully prevent the formation of a purpose to do an act and stand guiltless in equity of having prevented the act itself, notwithstanding the doing of the

act required a precedent purpose in that regard, which in all reasonable probability would have been executed had the purpose been formed. Our system of jurisprudence for remedying wrongs has no such weakness. The arm of equity, after the development and exercise of centuries, ought to be and is long enough and powerful enough to remedy all substantial wrongs where legal remedies fail, if it be seasonably invoked. No man can take advantage, wrongfully, of the weakness of infancy or old age, of ignorance, or of trust and confidence, and successfully challenge a court of conscience to remedy the mischief, if it be invoked as before indicated. It will in such circumstances stay the guilty hand of him who seeks to put forward a completed statutory limitation period upon the assertion of a right, or nonperformance of a condition precedent or subsequent, which he wrongfully caused to occur for the accomplishment of the very wrong sought to be redressed, and thus reach the ends of justice between the parties.

The result of the foregoing is that we must hold that the wrongful conduct of the executors and trustees of the Ludington estate was the proximate cause of appellant's losing her statutory rights in her husband's estate, hence she must have that part thereof which came into the trust as personal property which she would have secured by an election to take under the statute, or have its equivalent, and further have the same as of the time she would have obtained it in the regular course of the settlement of the estate. If more than legal interest has been obtained by the trustees for the use of the property in the meantime, she is entitled to the benefit thereof. She must be made good for all allowances to which she would have been entitled out of the estate for her support or otherwise had she made her election as indicated, and have the same as of the time such allowances would have come to her possession in the regular course of the administration of the estate. She must also have all the

other benefits that would have come to her in case of such election, including her proper share of the rents and profits of the real estate of which her husband died seised, including her share of the rent of the Pabst corner, so called, treating such rent as profit issuing out of real estate in which she is entitled to share on the basis of dower. Where a married woman joins with her husband in a lease and he dies during the term, she is entitled to be endowed of the rent. *Herbert v. Wren,* 7 Cranch, 370; *Boyd v. Hunter,* 44 Ala. 705; 1 Hilliard, Real Prop. (4th ed.), 176, § 12. She must account for all of the sums of money she has received, and as of the time of the receipt thereof, and she must restore to the estate the Kenwood home, in the state of Illinois, which she now occupies, and account for the use thereof. In such accounting the trustees should be allowed their reasonable expenses and charges for caring for the property upon substantially the same basis as if they had administered the same for appellant as trustees of an express trust. The heirs must make restitution of all moneys distributed to them which rightfully belong to appellant, so far as necessary to enable her to obtain the full relief to which she is entitled, and their interests in the estate, now in the hands of the trustees, must stand charged with that obligation. *Huguenin v. Baseley,* 14 Ves. 273; *Bridgeman v. Green,* Wilm. Op. 58, 65; *Luttrell v. Olmius,* cited in 11 Ves. 638. It is a very old principle that he who obtains property of another without consideration, as by gift, which came to the possession of such other by fraud, cannot hold the same as against the rightful owner thereof. On this, *Bridgeman v. Green, supra,* decided in 1757, is found often cited and applied, where Lord Wilmot said, speaking of distributees of property obtained by the distributor by fraud:

"Whoever receives it must take it tainted and infected with the undue influence and imposition of the person procuring the gift; his partitioning and cantoning it out amongst his

relations and friends will not purify the gift and protect it against the equity of the person imposed upon. Let the hand receiving it be ever so chaste, yet if it comes through a corrupt, polluted channel, the obligation of restitution will follow it."

The same principle applies in case property is obtained by fraud in any other way than by mere gift, and then distributed to others for whom the person procuring it acted. The principal cannot enjoy the fruits of the fraud of his agent.

The accounting, which a final disposition of the case in accordance with the foregoing requires, involves many details not covered clearly if at all by either the findings or the evidence so that this court can pronounce final judgment. Therefore, the judgment appealed from must be reversed and the cause remanded for further proceedings in accordance with this opinion, such further evidence to be taken as may be necessary to enable the trial court to determine definitely the rights of the parties in accordance with the principles here laid down for the government of the case. The judgment for costs in this court should be paid out of the estate.

*By the Court.*— So ordered.

DODGE, J. After most anxious consideration, I find myself unable to agree with the decision of this case. I do not differ from my brethren as to the duty of *uberrima fides* owed by the trustees to the plaintiff, nor as to her right to have rescinded any unfair contract or release of rights which she has made in ignorance of her rights, albeit without any affirmative deceit or intentional imposition by the trustees, but I fail to discover any such result as to justify the interposition of a court of equity. To briefly summarize the transaction: It is apparent that all parties met upon the supposition and understanding that the plaintiff expected and purposed to receive whatever might come to her of her

husband's estate as donation from him consonantly with the somewhat elaborate scheme of his will. The will itself declared her assent thereto, and, in the light of that declaration, it is obvious none of the parties contemplated any different attitude. When, therefore, plaintiff suggested that the testamentary provision was inadequate for her comfortable support, since she had determined to live in Kenwood and not to occupy the homestead, I think it entirely plain that the other beneficiaries met her in a spirit of generosity and regard for her welfare, and offered to increase the testamentary allowance to her, with no thought of depriving her of other rights. The modification whereby, wholly for her convenience, she was to take the Kenwood house in lieu of the Milwaukee homestead, made necessary some form of release of her former rights. This, clearly, was the arrangement as all parties understood it; and, had the written instrument signed by her correctly expressed it, no one could have suggested that any advantage had been gained over her, but, on the contrary, all must have conceded that she was recipient of generous donation. Such an instrument would merely have declared her release of all sums and property given her by the will, in consideration of the sums agreed to be paid her. So far as the written document in fact prepared for her signature exceeded this, it departed from the understanding reached, and I should unhesitatingly advocate its rescission if by such excess she were deprived of any rights. I cannot discover that she has been. She never had any rights in her husband's estate, save such as the will gave her. True, upon the performance of a certain condition she might acquire other and different rights, but that condition has never been performed. To assume that it would have been but for defendants' fraud seems to me not only the merest conjecture, but conjecture contrary to all the probabilities. The fraud consists not in increasing her share under the will, but in taking from her a re-

Ludington vs. Patton and others.

lease of statutory allowances inconsistent with the scheme of the will. I cannot doubt that the former, and not the latter, is responsible for plaintiff's satisfaction and quiescence, not only during the year allowed her for election, but for many subsequent years. Plaintiff's own testimony makes entirely apparent that nothing contained in that writing — no agreement of release on her part — deterred her from investigation or enforcement of her rights, nor could it. Had she within the statutory year elected to take by law, there can hardly be doubt that she would have been sustained in so doing, and her release of her statutory rights would have been ignored.. The plaintiff does not pretend that she ever within the year conceived the desire to elect against the will. She therefore could not have been deterred from so doing by her written contract. On the contrary, the fact that plaintiff received abundant provision for her comfortable support from the bounty of her husband, supplemented by the generosity of his children, was an entirely adequate reason for her mental state of satisfaction. · In that there was nothing of fraud or overreaching, under even the highest ethical or legal requirements. In brief, I think it established without controversy that plaintiff's omission to exercise her election was due to a situation involving no fraud on the part of defendants, and that, while they may be chargeable with legal fraud in the act of their attorney in obtaining plaintiff's written release, such fraud in no wise caused the result of which she complains.

BARDEEN, J. I concur in the foregoing opinion of Mr. Justice DODGE.

A motion for a rehearing was denied September 24, 1901.