WILL OF MARSHALL: HILLMAN, Petitioner, Appellant, vs. McLEOD and others, Respondents.

*September 10—December 2, 1941.*

166

For the appellant there were briefs by *Grady & Fairchild* of Portage, and oral argument by *Daniel H. Grady* and *Thomas E. Fairchild.*

For the respondents Arthur A. McLeod and Alexander Wiley there were briefs by *Wiley & Wiley* of Chippewa Falls, and oral argument by *Marshall Wiley.*

For the respondent St. Joseph's Hospital of the Sisters of St. Francis there was a brief by *Stafford & Stafford,* attorneys, and *John Frampton* of counsel, all of Chippewa Falls, and oral argument by *Harold E. Stafford.*

For the respondent town of Delton there was a brief by *Hill, Miller & Hill* of Baraboo, and oral argument by *James H. Hill.*

*Edward J. Dempsey* of Oshkosh argued orally for the trustees of Lawrence College.

*Harry S. Sicula* of Milwaukee argued orally for Ruth Marshall Champeny.

The following opinion was filed October 7, 1941:

ROSENBERRY, C. J. Upon this appeal the petitioner alleges that the court erred as a matter of law in reaching the conclusions set out in the statement of facts.

This assignment raises the following questions: (1) Did the gifts renounced by the widow pass to the residuum of the estate under paragraph Twelfth of the will? (2) Is the statute of limitations applicable to this proceeding? (3) Is the relief sought by appellant barred by laches?

(4) It is argued, (a) that the distribution of the residuary trust fund ought to have occurred at the death of the widow and during her life so much of the income sequestered as was necessary to compensate disappointed legatees; (b) unless appellant receives compensation out of either the absolute gifts relinquished by the widow or out of the income a substantial distortion will occur in testator's scheme.

We shall first dispose of appellant's contention that his loss is $16,081.67. It will be recalled that he paid the widow $10,000 for the interest that she acquired in the property specifically devised to him by her renunciation of the will. We think it clear that this measures the extent of petitioner's loss. This seems too plain for argument. This is an equity proceeding, not a proceeding upon contract, and what the petitioner is entitled to, if he is entitled to anything, is to be made good. Upon the payment of $10,000 the petitioner had and enjoyed everything that he would have had and enjoyed if there had been no renunciation by the widow.

While the question of sequestration of a renounced interest in an estate has not so far as we are advised been before this court, except in the case of *Will of Muskat* (1937), 224 Wis. 245, 271 N. W. 837, there are some sixty decisions in other

jurisdictions dealing with various phases of the question. Restatement of the Law of Property follows:

"§ 234. *Renunciation—sequestration of the renounced interest.* When a will otherwise effectively creates prior and succeeding interests; and an attempted prior interest is renounced; and the renouncer effectively claims an intestate share; and there is no manifestation of a contrary intent, then

"(a) if the satisfaction of this derogating claim causes substantial distortion among the other testamentary dispositions, so much of the renounced interest as does not pass as part of such intestate share is sequestered for judicial distribution among the other testamentary distributees;

"(b) if the satisfaction of this derogating claim causes no substantial distortion among the other testamentary dispositions and acceleration of the succeeding interest is excluded by the manifestation of an intent contrary thereto, so much of the renounced interest as does not pass as part of such intestate share is sequestered for judicial distribution among the other distributees. . . .

"(g) *'Manifestation of a contrary intent.'* Under the rule stated in this section, sequestration does not occur when there is a manifestation of a contrary intent. Such a contrary intent can be inferred from the language of the will or from the relations existing between the testator and his distributees or between the distributees or from any other relevant circumstance known to the testator. Such a contrary intent is manifested when the combined effect of the renunciation and of the removal of assets to satisfy the derogating claim so affects the balance of the disposition that it is clear that the testator, if he had known of this partial frustration of his desires, would not have desired such balance of the disposition to take effect.

"(h) *What constitutes a 'distortion.'* The satisfaction of the derogating claim made by the renouncer causes a distortion among the unrenounced dispositions of the will whenever such satisfaction operates otherwise than to decrease or to increase such other dispositions proportionately."

The following illustration is given: "Thus when the renouncer claims common-law dower and consequently the claim is confined to interests in land owned by testator A; and A has

devised his land to B and his other assets to his wife C for life, remainder to D absolutely, the wife's derogating claim affects solely the assets limited to B. D, without acceleration, would still receive exactly what A desired him to have. In either event B would receive less than A desired him to have. A distortion exists."

It is considered that the sequestration rule contended for by the petitioner in this case is not applicable for a number of reasons, the principal one of which is that the rule only applies where a contrary intent is not manifested by the testator. So far as we are able to discover practically all of the authorities agree upon this proposition. The testator was not only an able lawyer, had been circuit judge, and a member of this court for twenty-three years, but was a man of wide and varied business experience, and, as the decisions which he wrote fully disclose, very much interested in the right of a testator to dispose of his estate. He wrote the opinion in *Ludington v. Patton* (1901), 111 Wis. 208, 229, 86 N. W. 571, in the course of which, speaking for the court, he said:

"The will did not disturb appellant's [the widow's] legal rights, except provisionally. They were written into the instrument, by force of the statute, as effectually as if they had been expressed by the testator himself, leaving appellant the alternative of taking one provision or the other."

In the case of *Harrington v. Pier* (1900), 105 Wis. 485, 498, 82 N. W. 345, the court had under consideration the construction of a will executed by one Elizabeth Ann Sutton. The court was called upon to deal with the question of what constituted the residuum of the estate. Judge MARSHALL, writing the opinion for the court, said:

"The term 'residue' was used with reference to what might be left of the estate after satisfying the previously declared purposes. The amount of the residuum was not necessarily one fourth of the net estate, so called. The testatrix must be presumed to have had in mind, in view of the general language of the residuary clause, that all of her estate that for

any reason might not pass under the particular bequests would go to the residuary legatees under the general language of the residuary clause."

In *Will of McIlhattan* (1927), 194 Wis. 113, 117, 216 N. W. 130, the court held that—

"Upon the election of the widow and the death of Fred McIlhattan the purposes of the trust ceased, and the estate of the trustees also ceased under the statute quoted. It is a general rule of law that the election of the widow has the same effect as her death, and accelerates the remainders so that the beneficiaries enter directly into enjoyment thereof. [Citing cases.] This general rule of law does not apply if the terms of the trust expressly otherwise provide; that is, the intent of the testator must prevail if that intent is manifest from the will itself."

At the death of the widow, the provision for the payment of the income of the trust would lapse. Her renunciation having the same legal effect as her death, the provision made for her in paragraph Thirteenth lapsed.

The decision in *Will of McIlhattan, supra,* is peculiarly applicable to the facts in this case. In *Harrington v. Pier, supra,* the court held that the testatrix, a woman, so far as the record discloses not learned in the law or possessed of experience in business, was presumed to know the effect of the law upon her will. It would be a very difficult conclusion for this or any other court, having knowledge of Judge MARSHALL's legal and business ability, to say that in his case the presumption should not apply. He was one of the most thoroughgoing, accurate, and exhaustive lawyers that has ever appeared at the bar of Wisconsin. His method of work, the extent of his investigation, his deep learning in the law, are fully disclosed by his opinions found in the many cases where he spoke for this court. The fact that he was able to carry on an extensive law practice, and at the same time accumulate the large fortune which the record shows he had at the time

of his death, establishes the fact that in addition to his other abilities, he was a man of unusual business acumen.

It is argued on behalf of the petitioner that the will manifests a clear intent to give the farm in question to the petitioner. Of that it seems to us there can be no doubt, but the gift under the law was clearly subject to the right of the widow to elect, and of that Judge MARSHALL was fully aware, and must have had it in contemplation at the time he drafted his will. We fully concur in the conclusion of the trial court that the testator by his will clearly manifested an intent that the lapsed legacies should become a part of the residuum.

We shall not attempt to write a monograph on the law of this case. It has been well and exhaustively treated in the Restatement of the Law in all its various phases and aspects. If it were necessary to a decision in this case we should be obliged to hold that there is no distortion.

The residuary clause of this will is not the ordinary catch-all residuary clause designed mainly to prevent some part of the estate of the deceased passing as intestate property. By the Twelfth clause of his will the testator provided:

"Twelfth: All the rest of my property and all lapsed devises and bequests I will to my executors in trust to convert the same into good interest-bearing securities," etc.

The income from this residuum was to be paid to the widow during her life; upon her death one sixth, one half thereof was to go to the then surviving children of his sister, Rosa Jenkins, and the other half in equal portions to the surviving children of Walter Jenkins, and the then surviving children of his wife's brother, Frank. The second one sixth in equal portions to Leon Marshall, his son Rollin, and the surviving children of Forest Marshall, deceased. The third one sixth to Arthur A. McLeod, in recognition of his fidelity to him and assistance in conserving his property. The fourth one sixth to the trustees of Lawrence College, in which institution

Judge MARSHALL received his education and of which he was very fond. The remaining one third was to be divided between the city of Chippewa Falls, the town of Delton, in which the home of his parents and his farms were situated, and to St. Joseph's Hospital at Chippewa Falls. Two ninths thus were devised to institutions in Chippewa Falls, the place where Judge MARSHALL practiced law, and his home up to the time of his death. These provisions are absolute. The gifts to his wife, to his sister, Rosa Jenkins, to Leon Marshall, to Guy House, and to the petitioner are upon condition that the devisees shall survive him. When the widow elected to take under the statute, under the law of Wisconsin, she took not only her dower interest in the real estate but one third of the personal property which constituted the major part of the residual estate. As a result of her election the provisions made by the Twelfth and Thirteenth paragraphs of the will, which were manifestly to his most cherished legatees, were diminished in the same proportion as was his gift to the petitioner. If the loss of the petitioner be reckoned at $10,000 instead of one third of the appraised value of the farm, it was even more. If the rule contended for by the petitioner were applicable we see no ground upon which it could apply in this case under the circumstances. The petitioner's rights, whatever they were, arose at the time the widow made the election. If he was entitled to substitutional benefits out of that part of the estate which she renounced, remaining after her derogating claim was satisfied, the residuary legatees would be called upon to make good out of their equally diminished bequests, the petitioner's loss. Having suffered an equal or greater loss than the petitioner, we see no equitable basis for petitioner's claim even if the rule were applicable. The fact that the widow lived to the advanced age of ninety-one years does not affect the construction of the will. By her election she withdrew one third of the trust corpus from the favored legatees. As the estate now stands the petitioner's

claim if allowed would have to be made up out of the shares of the residuary legatees because practically all of the personalty has been distributed.

Many other questions are raised by counsel. Inasmuch as those already considered dispose of the entire controversy we shall not give them further attention. It is considered that the findings, decision, and order of the trial court are correct, and that they should be and they are hereby affirmed.

*By the Court.*—The order appealed from is affirmed.

FAIRCHILD, J., took no part.

A motion for a rehearing was denied, with $25 costs, on December 2, 1941.